Argued and submitted April 30, affirmed October 29, 2003

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT GARY MUZZY,
*Appellant.*

99-12-39743; A113096

79 P3d 324

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals from his convictions for attempted first-degree sexual abuse and endangering the welfare of a minor. ORS 163.427; ORS 163.575. Defendant's principal contention on appeal is that he was entitled to a judgment of acquittal on both charges because the state failed to adduce legally sufficient corroboration of his confession. ORS 136.425(1). We affirm.

Because defendant was found guilty, we view the evidence in the light most favorable to the state. *State v. Thompson*, 328 Or 248, 250, 971 P2d 879, *cert den*, 527 US 1042 (1999). Both charges against defendant arose from his alleged conduct with S, an 11-year-old girl. At the time of the alleged conduct, S's mother, Fettig, was involved with defendant and was living in his home. S, who lived with her father, would visit and stay overnight periodically. During the same period, from December 1998 through August 1999, another woman, Milburn, lived in the same home with defendant and Fettig.

On several occasions, S complained to Milburn and Fettig about seeing defendant's penis. According to S, the first time that she saw defendant's penis, she was doing homework at the dining room table and defendant was fixing his computer on the same table. When S bent down to pick up a pencil off the floor, she could see defendant's penis through a hole or an open zipper in his pants. S was "sort of" scared and mad—and she told Milburn.

On another occasion, S was in defendant's living room watching television with another girl and defendant. The other girl saw that defendant had his penis out and started yelling at him. S then looked and saw that defendant's penis was outside his clothing. She left the room and told Fettig.

According to Milburn, S told her that, when she and defendant were in defendant's computer room, he would often wiggle his pants and expose himself.[1] On four or five occasions, S complained to Milburn that defendant has "got

---

[1] Several witnesses confirmed that all of defendant's pants had holes in the crotch area.

his dick out again." In particular, with respect to the incident in which she and the other girl were watching television, S told Milburn that defendant had been sitting opposite them and looking at them "with his legs spread open and his hands on his leg with his thing hanging out." Milburn confronted defendant several times about exposing himself to S. When Milburn confronted defendant about the "living room" incident involving S and the other girl, defendant initially denied that anything had happened and then said, "If her mom [Fettig] don't like it, she should get her out of my house." On another occasion, defendant told Milburn that he probably engaged in such conduct to get attention.

Other witnesses confirmed that S had complained about defendant's conduct. Penwarden, a family friend, was present on two such occasions. On the first occasion, S complained to Fettig that defendant "is playing with himself," and Fettig then yelled at defendant. On the second occasion, several weeks later, S complained that defendant "was playing with his thing." After the second instance, Penwarden threatened to harm defendant if it happened again.

Keeney, a protective services caseworker, interviewed S. Initially, S denied that anyone had exposed himself to her, and she denied any touching. Several days later, when Keeney again spoke with S several hours after S was taken into protective custody, S indicated that she understood that she was in protective custody because defendant had shown her his penis. Keeney then arranged for a CARES evaluation of S. During that evaluation, S stated that she had seen defendant's penis on two occasions but denied that any touching had occurred. Throughout all interviews and in her trial testimony, S consistently denied that defendant had ever touched her or that she had touched him. S also denied that defendant had ever touched his penis in her presence.

Portland Police Detective Smith interviewed defendant at length after advising defendant of his *Miranda* rights and informing him that he was being investigated for "inappropriate activities" involving S and another girl.[2] Smith began the interview by stating that he knew that defendant

---

[2] Smith arranged to have other officers arrest defendant on an outstanding DUII warrant so that he could interview defendant about the allegations concerning S.

liked to show his penis to women. Defendant responded that he had shown his penis to two of his ex-girlfriends to see if they were "interested" and that he would show his penis through holes in his pants, or would unbutton his pants. Smith told defendant that S had said that she had seen defendant's penis. In response, in positing explanations about how that could have occurred, defendant suggested that S could have seen him masturbating in his room when the door was ajar, showing his penis to ex-girlfriends whom he was trying to interest in sex, or having sex with S's mother, Fettig. Defendant asserted that he had never intentionally shown S his penis. He acknowledged that he recalled a time when he was talking to an ex-girlfriend and had his pants unbuttoned and his penis out, and that he had looked under the table and saw S there looking at him.

Smith told defendant—falsely—that S had said that she had touched defendant and that defendant had touched her.[3] Smith admonished defendant that S "needed him to acknowledge what he had done so that she could get on with her life." Defendant then spoke of an incident when S's mother was fondling his penis and S was in the room, watching them, and suggested that S may have touched him then, but that he did not feel it.

Defendant then described the incident that became the subject of this prosecution: Six months earlier—in the spring of 1999—defendant had been in the basement computer room, watching a video and masturbating. As he was masturbating, S had come into the room. Either just before or just after he ejaculated, defendant had noticed S watching him, and he had let her touch and rub his penis briefly. According to Smith:

> "[Defendant] said that he thought to himself, quote, this is bad, unquote, and that he felt, quote, ashamed, unquote, that he let her touch him. He said he hurriedly sat, turned around and put his penis back into his pants. He said he was embarrassed and that he remembered thinking that he hoped [S] wouldn't tell anyone what happened because he could get into trouble."

---

[3] As noted, S consistently denied that any touching ever occurred.

After defendant described that incident, Smith suggested that defendant write to S apologizing for what he had done. Defendant agreed. Smith left defendant alone to write the letter but suggested that defendant "might tell her what happened because a letter of apology not saying what you are apologizing for isn't really an apology." The letter, which was received into evidence at trial, stated:

> "I'm writing this letter to apologize for something that happened a few months ago, in the computer room. Remember when you came in the room [and] I was doing something to myself that looked different than anything you have seen me do before? Well you are such a nice girl [and] I think the world of you [and] would never want to do anything to hurt you. Well I should never have let you touch me the[re], between my legs. * * * Please remember this letter [and] believe me when I say I apologize, from my heart."

After defendant wrote the letter, he handed it to Smith, who marked the letter with a Portland Police Department identification number. There is no evidence that the letter was ever mailed or delivered to S.

Defendant was subsequently indicted on charges of sexual abuse in the first degree and endangering the welfare of a minor, with both charges being based on the "touching" incident. The case was tried to the court,[4] and, after the state presented its case, defendant moved for a judgment of acquittal on both charges, arguing that the state had not presented sufficient evidence to corroborate his confession. Although the colloquy was somewhat confused, it appears that the trial court concluded that defendant was entitled to a judgment of acquittal on the completed crime of sexual abuse in the first degree because the state had failed to present any evidence, other than defendant's confession, of actual touching. Thus, the state had failed to adduce legally sufficient corroboration of the confession in that respect. *See* ORS 136.425(1). However, the state argued—and the trial court agreed—that there was sufficient corroboration to withstand a motion for judgment of acquittal as to the offense of attempted sexual abuse in the first degree, as well as endangering the welfare of a minor. In so ruling, the court referred, particularly, to the

---

[4] Defendant's first trial ended in a mistrial.

evidence that defendant had repeatedly exposed himself to S and had also exposed himself to his ex-girlfriends in order to interest them in sexual activities.

After the denial of his motion for judgment of acquittal, defendant presented no evidence. The trial court then convicted defendant of attempted first-degree sexual abuse and endangering the welfare of a minor.

On appeal, defendant raises seven assignments of error, several of which are intertwined. We reject, without further discussion, defendant's first assignment of error, which challenges the trial court's denial of defendant's motion to dismiss on double jeopardy grounds.[5] The other, interlocking assignments of error all appear to rest on either, or both, of two propositions: First, the evidence describing previous incidents in which defendant had exposed himself to adult girlfriends was inadmissible under the analysis of *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), and *State v. Pratt*, 309 Or 205, 785 P2d 350 (1990). Second, in all events, the evidence that the state presented did not sufficiently corroborate defendant's confession so as to support convictions on either count. We address each in turn.

■ Defendant's argument that the trial court erred in admitting "prior bad acts" evidence that he had exposed his penis to two ex-girlfriends in order to interest them in sexual activity is unpreserved. Defendant filed a motion *in limine* to exclude evidence of incidents in which he had exposed himself to others. However, in arguing that motion, defense counsel conceded the admissibility of defendant's statements about exposing himself to his two ex-girlfriends:

> "[The prosecutor] can go into [defendant's] statements with the detective about what may or may not have happened with [S], *and I think he would be able to go into [defendant's] comments early on in the interview that—you know, the only thing that's even close to that is 'this dumb situation that came up with two of my ex-girlfriends.'*

---

[5] That motion was based on the circumstances that resulted in the mistrial in defendant's first trial. *See* 190 Or App at 311 n 4.

"It's—this—these alleged exposures with other people, *other than either* [S] *or* [*the two ex-girlfriends*] * * * [that] don't involve [S]."

(Emphasis added.) At no point thereafter did defense counsel contradict or call into question his earlier concession that defendant's statements concerning exposing himself to his two ex-girlfriends would be admissible.[6] Thus, any alleged error was not preserved, and we will not address it.

We turn, then, to the question of whether defendant's confession was sufficiently corroborated. ORS 136.425(1) provides:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed.*"

(Emphasis added.)

In *State v. Lerch*, 296 Or 377, 677 P2d 678 (1984), the court construed ORS 136.425(1) as embodying the common-law rule that a confession may not be used to prove a crime "without some evidence independent of the confession which tends to establish or to prove the *corpus delicti.*" *Id.* at 394. In that regard, the court quoted with approval the following explanation of the common-law corroboration requirement:

" 'The vast majority of American jurisdictions have adopted the [*corpus delicti*] approach. This, of course, requires that the *corpus delicti* be defined. Literally, the phrase means the "body of the crime." To establish guilt, it is generally necessary for the prosecution to show that (a) the injury or harm specified in the crime occurred, (b) this injury or harm was caused by someone's criminal activity, and (c) the defendant was the guilty party. To sustain a conviction, the requirement of independent proof of the *corpus delicti* demands only that the prosecution have

---

[6] At trial, with the exception of the incident in which S and the other girl were watching television, the state did not present evidence that defendant exposed himself to anyone other than the two ex-girlfriends.

introduced independent evidence tending to show (a) and (b). It is not necessary that the independent proof tend to connect the defendant with the crime. Nor need the independent proof establish these elements beyond a reasonable doubt.' "

*Id.* at 393 (quoting Edward W. Cleary, ed., *McCormick's Handbook on the Law of Evidence* § 158, 346-47 (2d ed 1972) (*McCormick on Evidence*)). The court focused, particularly, on the quantum and quality of "some other proof" within the meaning of ORS 136.425(1):

"Although 'some proof' does not define a certain amount of proof, it does serve the function of limiting the proof required under ORS 136.425(1). In other words, instead of requiring full or complete proof that a crime has been committed, 'some' reduces or limits the amount required. The net result is that ORS 136.425(1) instead of requiring evidence that the crime has been committed or the *corpus delicti* established merely requires evidence that *tends* to prove or establish the *corpus delicti*.

"* * * * *

"We hold that 'some proof' means that there is enough evidence from which the jury may draw an inference that tends to establish or prove that a crime has been committed."

*Id.* at 397-98 (emphasis in original; footnote omitted).[7]

In *State v. Manzella*, 306 Or 303, 759 P2d 1078 (1988)—which we describe in greater detail below—the court revisited the corroboration standard of ORS 136.425(1).

---

[7] In *Lerch*, a murder prosecution, the court concluded that that standard had been satisfied by circumstantial evidence. There, the defendant confessed that he had strangled the seven-year-old victim and disposed of his body by placing it in a dump box behind a fish market. However, before police could search the dump box, it had been taken to a landfill and its contents compacted. As corroboration of the defendant's confession, the state relied on evidence that (1) the seven-year-old victim disappeared from his home, near a park, near the defendant's apartment; (2) the victim was seen in the park with the defendant; (3) the defendant was known to have someone in his apartment that day; (4) later, the defendant gave his sister information about the body of a child in a bag, in a dumpbox, behind a fish market; (5) the person who operated the market reported that he smelled an odor like a dead human body; (6) hairs taken from the defendant's jacket were consistent with the victim's hair; and (7) the victim never returned home. 296 Or at 379-81. The court concluded that that circumstantial evidence was sufficient under the "some proof" standard of ORS 136.425(1).

There, the court assessed the sufficiency of corroboration of the defendant's confession that he had been driving while suspended when he was involved in an accident. For corroboration of that confession, the state relied on the defendant's earlier remarks to an officer who was investigating the accident, in which the defendant had acknowledged that he had been driving. The state argued that those remarks were merely "admissions," and not a "confession," and, thus, could be used to corroborate the confession. After extensively exploring the distinction between "admissions" and "confessions," 306 Or at 308-11, 313-16, the Supreme Court concluded that, because the defendant's initial remarks to the police officer were made for the purpose of assisting the accident investigation—and not for the purpose of acknowledging guilt—those remarks were merely "admissions" and, as such, constituted "some proof" sufficient to corroborate the defendant's subsequent confession. *Id.* at 316.

We addressed the corroboration requirements of ORS 136.425(1) most recently in *State v. Fry*, 180 Or App 237, 42 P3d 369 (2002). There, the defendant confessed to four instances of raping his four-year-old daughter and was subsequently charged with multiple counts of rape and with incest.[8] Because no physical evidence corroborated that actual penetration had occurred, the state, for corroboration, relied solely on the victim's statement to a care provider that, on one occasion, the defendant had put his penis between her legs and "hurt her." *Id.* at 240. Following a bench trial, the court found the defendant guilty of, *inter alia*, four counts of rape in the first degree and one count of incest.

On appeal, we considered whether the victim's statements corroborated the defendant's confession with respect to the commission of any rape—and, even if so, whether that corroboration was of only one rape or of the multiple rapes that had been charged. In framing the analysis, we observed:

"Under [ORS 136.425(1)] as the Supreme Court has construed it, there must be evidence independent of defendant's confession that tends to establish the *corpus delicti* of

---

[8] *Fry* also involved other charges, but they are not pertinent to our discussion.

*each* offense with which he was charged. Proof that a different crime has been committed cannot satisfy that requirement, nor can proof of one charged crime satisfy the requirement as to a different charged crime.

"* * * * *

"Under ORS 136.425(1), the requirement that the other evidence tends to prove the *corpus delicti* means that there must be other evidence that permits a reasonable inference that each crime to which defendant confessed actually occurred."

*Fry*, 180 Or App at 244, 246 (emphasis in original). Applying that analysis, we concluded that, while more than one inference could be drawn from the victim's statements as to whether penetration had occurred, those statements were sufficient "other proof" that rape and incest had occurred. *Id.* at 246. However, we went on to hold that, because the victim stated that the conduct had occurred only once, there was " 'other proof' of only one instance of penetration." *Id.* Consequently, we reversed three of the four rape convictions.

We cannot, and will not, pretend that the principles expressed in *Lerch, Manzella*, and *Fry* are precise, much less that their application is easy. The content of *"corpus delicti"* in this context is somewhat amorphous. Although it is apparent that, under the *corpus delicti* formulation, it is not necessary that the "other evidence" corroborate every element of an offense, it is less clear what it means to show that the " 'injury or harm specified in the crime * * * was caused by someone's criminal activity.' " *Lerch*, 296 Or at 393 (quoting *McCormick on Evidence*, § 158, 346-47). For example, in corroborating an *attempted* crime, must the "other evidence" tend to prove the requisite mental state of *"intentionally* engaging in conduct that constitutes a substantial step toward the commission of a crime"? ORS 161.405(1) (emphasis added). Moreover, as *Lerch* itself acknowledges, there is a certain Goldilocks-like quality to the "some evidence" standard. How much is enough? *See Lerch*, 296 Or at 397 (" 'Some' means more than 'none.' It probably means more than 'slight' but less than 'substantial,' but both 'slight evidence' and 'substantial evidence' are 'some evidence.' ").

With that caveat, we return to this case. The state contends that defendant's confession was corroborated by a variety of evidence, including the letter that defendant wrote to S, S's testimony, S's statements to third parties about defendant exposing himself to her and "playing with himself" in S's presence, and evidence that defendant exposed himself to adult women as an invitation or prelude to mutual sexual activity. The state contends that that evidence, separately or collectively, was "sufficient" as "some evidence," for purposes of ORS 136.425(1), of the commission of both attempted sexual abuse in the first degree and endangering the welfare of a minor.

Defendant counters that that evidence was insufficient to satisfy the requirements of ORS 136.425(1) as to either crime. Although defendant implicitly acknowledges that defendant's letter to S would be sufficient corroboration if it were merely an "admission," he contends that, in the totality of the circumstances, that letter must itself be deemed to be a confession, or such an inextricable extension of his confession that, under *Manzella*, it cannot constitute "some other proof" under ORS 136.425(1). Defendant also disputes that S's statements, the third parties' recounting of her statements, or the evidence that defendant exposed himself to adult girlfriends tended to establish the *corpus delicti* of either attempted sexual abuse or endangering the welfare of a minor.

Because it is potentially dispositive, we begin with the question of whether, under *Manzella*, defendant's letter to S was a "confession" or an "admission." In *Manzella*, as noted, a police officer was dispatched to investigate an auto accident. When he arrived, both cars were parked. The defendant told the officer that one of the cars was his and that, while he had been stopped in traffic, waiting to turn, his car had been struck from behind. 306 Or at 305. The officer checked the defendant's license and discovered that his driving privileges had been restricted. When the officer confronted the defendant with that information, the defendant "admitted that he knew that he had been driving in violation of the restrictions." *Id.*

The defendant was then charged with driving while suspended. At trial, aside from the defendant's statements to the officer, there was no evidence that defendant had been driving, or even that his car had been at the scene of the accident. *Id.* The defendant moved for a judgment of acquittal based on lack of corroboration of his confession. The trial court denied that motion, and the defendant was convicted. The Supreme Court affirmed.

The dispositive issue on appeal was whether the defendant's initial statements to the officer were "admissions"—which could be used to corroborate the defendant's confession—or were themselves a "confession." *Id.* at 308. That, in turn, depended on the meaning of "confession," as used in ORS 136.425(1). The court observed:

> "[S]ome American jurisdictions, including Oregon, adopted strict definitions of the word, 'confession.' These courts held that, although a 'confession' was presumed to be involuntary and inadmissible, an 'admission' was not. In *State v. Howard*, 102 Or 431, 452, 203 P 311 (1921), this court noted that 'a confession which is actually or practically an acknowledgment of guilt is *prima facie* involuntary and imposes upon the state the burden of showing that it was not induced by threats or promises of favor.' Admissions, however, 'which while evidentiary in character are not confessions of guilt,' were *'prima facie* voluntary.' "

*Manzella,* 306 Or at 309 (citations omitted).

The court further noted that, at common law, courts had drawn and maintained the same distinction between "admissions" and "confessions" in employing the *corpus delicti* rule formulation. *Id.* at 311. As an example, the court invoked *State v. Reinhart*, 26 Or 466, 38 P 822 (1895), in which the defendant, a bookkeeper, was convicted of embezzlement based solely on evidence of entries in his employer's books in the defendant's own handwriting. There, the court rejected the defendant's argument that the handwritten entries constituted a "confession" and, thus, had to be corroborated:

> "A 'confession,' in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or

declaration of an independent fact from which guilt may be inferred."

*Id.* at 479.

The court in *Manzella* then recounted the statutory evolution of ORS 136.425(1) and concluded that that statute distinguished between "admissions" and "confessions," and that admissions were not subject to the statute's corroboration requirements. *Manzella*, 306 Or at 315. The court concluded:

"Thus, it appears that statements made for some purpose other than to acknowledge guilt, *i.e.*, exculpatory statements or statements made as part of a person's employment duties, are not confessions. *It follows, then, that a 'confession' must have been made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense.*"

*Id.* at 316 (emphasis added). Significantly, the court emphasized one final qualification:

"*[A]ll* statements made during the course of a confession are protected by ORS 136.425(1). The state may not dissect a confession and use isolated statements to corroborate the 'core' of the confession."

*Id.* at 316 n 13 (emphasis in original).

Applying those "guidelines," the court concluded that the defendant's initial acknowledgment to the investigating officer that he had been driving the car at the time of the rear-end collision was not a "confession" for two related reasons. First, the "defendant did not make that statement for the purpose of acknowledging guilt; he made it to further [the] investigation of an automobile accident." *Id.* at 316. Second, the defendant's initial remarks were "not so clearly related to his confession to be a part of it." *Id.* In particular, those remarks were made at the beginning of the officer's investigation; there was a temporal break between those remarks and the defendant's confession; and the event that precipitated the defendant's confession—the investigating officer confronting him with the results of the traffic records check—occurred in the interval between the initial statement and the confession. *Id.*

The state invokes *Manzella* here, arguing that defendant's letter to S could not be a "confession" because defendant did not write that letter "for the purpose of acknowledging that [he was] guilty" of a crime. *Manzella*, 306 Or at 316. Rather, the state asserts, the purpose of that letter, as stated in its text, was to "apologize."

We disagree with the state's position for several related reasons. First, "purpose," as employed in *Manzella*, is neither an absolute nor an exclusive concept. A person may have many concurrent and collateral purposes for making a statement. An apology does not preclude an acknowledgment of guilt; to the contrary, an explicit and candid acknowledgment of guilt is often integral to a true apology. *See* 190 Or App at 311. Indeed, as noted, in prompting defendant to write to S, Detective Smith instructed defendant that "a letter of apology not saying what you are apologizing for isn't really an apology."

Second, here, unlike in *Manzella*, the confession and defendant's letter to S were inextricably intertwined. Defendant wrote that letter (1) while in police custody, (2) immediately after confessing, and (3) at the prompting of the investigating officer.[9] Given the concurrence of those circumstances, that statement was "so closely related to [defendant's] confession as to be a part of it." *Id.*

Third, it is unclear to what extent the "purpose" assessment under *Manzella* is objective, subjective, or some combination of the two. *See, e.g., State v. Anderson*, 103 Or App 436, 439, 797 P2d 1072 (1990), *rev den*, 311 Or 60 (1991) ("In order to determine the *purpose* of a statement," the court "must ascertain the subjective intent of the speaker, not just the objective content of the statement." (Emphasis in original.)). Here, as noted, the trial court acquitted defendant of the completed crime of first-degree sex abuse on the ground that the state had failed to produce evidence corroborating

---

[9] Presumably, given that defendant was in custody, he wrote the letter on paper supplied by the police. As noted, *see* 190 Or App at 311, defendant gave the letter to Smith, who marked it with a police identification number, and there is no evidence that Smith, or anyone else, ever delivered the "apology" to S.

actual touching. In so concluding, the court necessarily determined that defendant's letter to S could not be legally sufficient corroboration because that letter was itself a confession or inextricably intertwined with defendant's confession. Implicit in that determination, at least arguably, was a finding by the trial court that defendant wrote that letter to acknowledge guilt. To the extent that defendant's "subjective" purpose is material, such a determination is amply substantiated by defendant's circumstances at the time that he wrote the letter.

We thus conclude that defendant's letter to S either was itself a "confession" or was so closely related to his immediately antecedent confession to Smith that it could not be used to corroborate that confession.[10]

We return then to whether the balance of the state's evidence adequately corroborated defendant's confession with respect to endangering the welfare of a minor and attempted first-degree sexual abuse. ORS 163.575(1) provides, in part:

"A person commits the crime of endangering the welfare of a minor if the person knowingly:

"(a)   Induces, causes or permits an unmarried person under 18 years of age to witness an act of sexual conduct * * * as defined by ORS 167.060[.]"

ORS 167.060(10), in turn, defines sexual conduct as including masturbation.

---

[10] *Anderson*, on which the state relies, is materially distinguishable. There, the defendant was arrested for driving under the influence of intoxicants and, as he was being transported to the police station, he volunteered that he "didn't realize he could be arrested for DUII while operating an ATV in the sand dunes." 103 Or App at 438. The defendant later confessed that he had, in fact, been driving while under the influence of intoxicants. At trial, although there was ample evidence that the defendant was intoxicated, the only evidence corroborating his later confession that he had been driving was the statement quoted above. We held that that statement was not a confession because the defendant was not "acknowledging that he was guilty of DUII, but * * * express[ing] his lack of knowledge regarding the law." *Id.* at 439.

Here, in contrast, the inculpatory statements in defendant's letter to S were not merely abstract musings about whether certain conduct might be criminally punishable. Rather, those statements explicitly acknowledged guilt for conduct that defendant knew was criminal.

■ Here, defendant confessed to knowingly permitting S to witness an act of masturbation. As noted above, corroboration of a confession is sufficient if "the state introduce[s] independent evidence that tends to establish the *corpus delicti.*" *Lerch,* 296 Or at 394. *Lerch,* in turn, endorsed *McCormick's* formulation of sufficient proof of the *corpus delicti* as evidence tending to show that (1) " 'the injury or harm specified in the crime occurred' " and (2) that injury or harm " 'was caused by someone's criminal activity.' " *Lerch,* 296 Or at 393 (quoting *McCormick on Evidence,* § 158, 346-47). With respect to endangering the welfare of a minor as charged here, the proscribed "harm or injury" is that a minor witnessed an act of "sexual conduct" (masturbation), and the "criminal conduct" is that someone knowingly induced, caused or permitted that witnessing.

■ The state's evidence sufficiently "tended" to establish both of those components of the *corpus delicti.* In particular, the witness Penwarden's recounting of S's statements that defendant was "playing with himself" or "playing with his thing" corroborated that S had, in fact, witnessed defendant masturbating. Although Penwarden did not specifically identify the dates on which S made the statements, as a circumstantial matter in the context of this record, those statements appear to have been made during the same period—the spring of 1999—as the charged conduct, based on defendant's confession. Moreover, S made those statements contemporaneously with having seen defendant masturbating in his home. Given that temporal and spatial concurrence, a reasonable trier of fact could conclude that either of S's statements that Penwarden recounted corresponded to, and corroborated, the charged incident.

Somewhat more problematic is whether the state's proof tended to show that defendant *knowingly* induced, caused, or permitted that witnessing—for example, S might have accidentally viewed defendant, or walked in on him without knocking, and then made the statement that Penwarden recounted. Although the question is close, we believe that a reasonable trier of fact could infer the requisite mental state from the evidence that, during the relevant time period, defendant frequently exposed his penis to S, despite being repeatedly told not to do so, by Milburn, Fettig, and

Penwarden. Indeed, when confronted by Milburn, defendant responded that he had exposed himself to get attention. Moreover, as noted, when confronted by Milburn, defendant, rather than being apologetic, was defiant: "If her mom don't like it, she should get her out of my house." That response could reasonably be understood to evince defendant's belief that he was entitled to act as he pleased in his own home, regardless of the effect on others. Given that evidence, and given the pliability of the "tendency" standard, a reasonable trier of fact could conclude that, when defendant masturbated in S's presence, he acted with an awareness that she was watching but acted nevertheless.

We consider, finally, the sufficiency of evidence of attempted sexual abuse in the first degree. ORS 163.427(1) describes, as pertinent here, the elements of first-degree sexual abuse:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a)    Subjects another person to sexual contact and:

"(A)    The victim is less than 14 years of age[.]"

ORS 163.427(1). The indictment specified that the sexual contact at issue was causing S "to touch the defendant's penis." *See generally* ORS 163.305(6) (defining "sexual contact" as including "causing [another] person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party").

As noted, defendant was charged with the completed crime of first-degree sexual abuse, but the trial court granted defendant's motion for judgment of acquittal on that charge because no evidence corroborated defendant's confession that he permitted S to touch his penis. However, the trial court ruled that the state could proceed on the charge of attempted first-degree sexual abuse. *See* ORS 136.465 (a defendant may be found guilty of crime charged in accusatory instrument or of an attempt to commit such a crime). A person attempts to commit a crime "when the person intentionally engages in conduct which constitutes a substantial step toward the commission of the crime." ORS 161.405.

The question thus reduces to whether the state adduced legally sufficient evidence that defendant engaged in conduct that constituted a substantial step towards committing the crime of first-degree sexual abuse as charged in the indictment—*i.e.*, that defendant intentionally engaged in conduct that constituted a "substantial step" towards causing S to touch his penis. Several factors inform—and, frankly, complicate—our analysis. First, defendant's confession itself did not *necessarily* establish the requisites of attempted sexual abuse. Defendant simply stated that he permitted S to touch his penis after she entered the computer room while he was masturbating. Defendant did not state that he undertook any conduct with the intent of promoting the ultimate end of causing S to touch his penis. In particular, defendant did not state that he masturbated in S's presence in order to induce or entice her to touch his penis.

Second, as we understand the state's theory of attempt, it was, ultimately, predicated on the premise that the same conduct that constituted endangering the welfare of a minor—masturbating in S's presence—was done not merely knowingly, but intentionally, as a substantial step toward inducing S to touch defendant's penis. Thus, the state's "corroboration" with respect to attempted sexual abuse depends substantially on the state "bootstrapping" its evidence relating to endangering the welfare of a minor, with the additional requirement of intentionality. Such "bootstrapping" can be problematic. As we held in *Fry*, corroborative evidence must tend to "establish the *corpus delicti* of *each* offense," and "[p]roof that a different crime has been committed cannot satisfy that requirement, nor can proof of one charged crime satisfy the requirement as to a different charged crime." 180 Or App at 244 (emphasis in original).

We do not, however, understand *Fry* to preclude such "bootstrapping" if the state can prove that the first, sufficiently corroborated crime was, in addition, intentionally undertaken as a substantial step toward the commission of a second crime. Rather, for attempt crimes, corroboration of another crime may be employed to establish the "substantial step" element. *Cf. State v. Walters*, 311 Or 80, 86 n 9, 804 P2d 1164, *cert den*, 501 US 1209 (1991) ("[T]he same conduct may constitute a substantial step toward the commission of more

than one charged crime, as long as that conduct strongly corroborates the actor's criminal purpose underlying each charged crime.").[11]

Thus, the same evidence that corroborated, with respect to the endangering charge, that defendant had knowingly masturbated in S's presence, similarly corroborates the same conduct, as recounted in defendant's confession, with respect to attempted first-degree sexual abuse. Still, the question remains: Did the state adduce legally sufficient evidence that defendant engaged in that conduct intentionally, as a substantial step toward causing S to touch his penis?

We begin with *Walters*. There, the defendant was charged with attempted first-degree kidnapping, attempted first-degree rape, and attempted first-degree sodomy. As proof of a "substantial step," the state presented evidence that the defendant had approached the 13-year-old victim at a garage sale and asked if she could help him look for a (nonexistent) dog. When the girl refused, the defendant offered her money, which she also refused. The defendant then offered to drive the girl home in his truck, but she declined. After the defendant followed the girl to her house, the child's mother called the police. When the police arrived and questioned the defendant, he admitted to offering the girl money if she would get into his truck and, when asked whether he was sexually attracted to the girl, he responded that he "could have found [himself] into an uncomfortable position today and didn't mean to" and commented that the girl was "13 going on 24." 311 Or at 83.

In addition, as proof of intent in *Walters*, the state offered evidence of the defendant's prior convictions for rape and sodomy arising out of an incident six years before. On that occasion, the defendant had approached another 13-year-old girl and had also asked her if she had seen a (nonexistent) dog. The defendant had then offered the girl $20 to

---

[11] *Fry* itself did not involve proof of attempt. Rather, the question there was whether corroboration of one act of rape could corroborate a confession of multiple, separate acts of rape. The statement in *Fry* about "a different crime" referred to completely distinct crimes that occurred on other occasions. Indeed, in *Fry*, we affirmed not only the single rape conviction, but also the related incest conviction, based on the same corroboration. 180 Or App at 246.

help look for the dog and, when she refused, he had forced her into his car and raped and sodomized her. *Id.* at 84.

The Supreme Court ultimately affirmed the convictions.[12] The court first determined that the evidence of the conduct that resulted in the defendant's 1981 convictions was properly admitted as proof of intent because of the "great" circumstantial similarity between the two incidents. *Id.* at 84-85. The court then turned to the "more troublesome" question of the sufficiency of the state's proof of the "substantial step" requirement, *id.* at 85, and explored the contours of that requirement:

> "ORS 161.405 codifies the Model Penal Code's 'substantial-step' test for distinguishing acts of preparation from an attempt. In § 5.01(2), the Model Penal Code states that to be a substantial step the act must be 'strongly corroborative of the actor's criminal purpose[,]' Commentary to the Oregon Criminal Code of 1971, § 54, at 49, *i.e.*, defendant's conduct must (1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose. Model Penal Code and Commentaries (Official Draft and Revised Comments), American Law Institute 352, § 5.01 (1985). We note that the Model Penal Code specifies a number of situations that 'shall not be held insufficient as a matter of law' if they are strongly corroborative of the actor's criminal purpose. One of those situations is enticement. *Id.*, 5.01(2)(b), at 296 ('enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission'). *See* Commentary to the Oregon Criminal Code of 1971, § 54, at 49 (same principle stated)."

*Id.* at 85-86 (footnotes omitted). Applying those principles, the court concluded that the defendant's "persistent efforts" to entice the victim into his truck, the fact that he then followed her, and his later comments to the victim's mother and the police officer together constituted a substantial step in furtherance of his criminal purpose to kidnap, rape, and sodomize the victim.[13]

---

[12] We had previously reversed the convictions on the ground that the evidence was insufficient to prove the defendant's intent to commit the charged crimes. *State v. Walters*, 99 Or App at 570, 783 P2d 531 (1989).

[13] In a subsequent federal habeas corpus proceeding, the Ninth Circuit granted relief on the attempted rape and attempted sodomy convictions, concluding that

In *State v. Rinkin,* 141 Or App 355, 362-65, 917 P2d 1035 (1996), we revisited *Walters*'s treatment of the sufficiency of proof of "enticement" as evidence of a "substantial step." In *Rinkin,* the defendant was convicted of attempted sodomy of a 10-year-old boy. As proof of a "substantial step," the state presented evidence that the defendant had repeatedly approached the boy, who was a stranger, at a bus stop and talked to him about "skipping school" and "doing things his parents would not let him do." *Id.* at 357. On one occasion, when the defendant learned that the boy was interested in karate, he offered the boy free lessons in his apartment, telling him that he was welcome to visit any time, so long as he came alone. On another occasion, the defendant asked the boy whether he had ever seen any *Playboy* magazines—and, when the boy replied, "no," the defendant offered him a *Playboy* if he would come to the defendant's apartment. Although the defendant invited the boy to his apartment and gave him the address and telephone number, the boy never went to the apartment. As proof of the defendant's intent, the state offered letters that the defendant had written to another boy and his parents apologizing for having shown that boy a *Playboy* magazine and having asked him to have sex. *Id.* at 357-58.

On appeal, we reversed the conviction and remanded for a new trial on the ground that the letters to the other young boy and his parents were erroneously admitted under *Johns. Rinkin,* 141 Or App at 367-71. However, we also rejected the defendant's contention that his motion for judgment of acquittal should have been allowed because the state's evidence of a substantial step was legally insufficient. *Id.* at 360-67. In our analysis, we revisited *Walters* and noted, particularly, that a substantial step must *both* (1) "advance" the criminal purpose; *and* (2) "provide some verification of the existence" of that purpose. *Id.* at 365.

With respect to the first, "advance[ment]" prong, we noted that even conduct that is ostensibly innocent could satisfy that requirement:

---

the state had failed to adduce legally sufficient proof that the defendant had engaged in conduct representing a substantial step toward the commission of those crimes. *Walters v. Maass,* 45 F3d 1355 (9th Cir 1995). *See State v. Rinkin,* 141 Or App 355, 363-65, 917 P2d 1035 (1996) (describing history).

"Here, as in *Walters*, defendant's efforts to induce 'A' into accompanying him to a private place within his exclusive control could reasonably be deemed to have facilitated the crime of sodomy. Defendant *could* have invited 'A' to his apartment for a variety of purposes, including innocent purposes. However, it is equally apparent that privacy, if not necessarily a prerequisite for seduction and sodomy, substantially facilitates such conduct."

141 Or App at 365 (emphasis in original). The "verification" requirement is, however, distinct and more rigorous:

"Although *Walters* does not expressly so state, the 'verification' component must have a different content from the first, 'advance[d] the purpose' component. Otherwise, they would not be phrased in the conjunctive; that is, if all conduct that satisfied the former also satisfied the latter, the latter would be superfluous. Our understanding is that, unlike the 'advance[d] the purpose' component, which can be satisfied even by conduct that arguably could promote a variety of ends, both criminal and noncriminal, the 'verification' requirement requires conduct that is referable to *some* criminal purpose.

"We note, moreover, that *Walters* does not seem to require *exact* 'verification' of the *particular* criminal purpose charged. For example, although Walters' conduct bespoke a purpose of engaging in some general, unspecified, unlawful sexual conduct with the girl, nothing in his words or actions in 1987 pertained to forcible compulsion, which is an element of rape, or to deviate sexual activity, which is an element of sodomy. Instead, the court apparently concluded that once the state proved Walters' specific intent to commit rape and sodomy, conduct evincing a criminal purpose that was consistent with, if not necessarily uniquely referable to, those crimes afforded sufficient 'verification.' *Accord Walters*, 311 Or at 86 n 9 ('The same conduct may constitute a substantial step toward the commission of more than one crime.'). Thus, although Walters' conduct was not uniquely referable to attempted rape or sodomy—*i.e.*, that conduct was also consistent with the other possible, lesser included crimes, including various degrees of sexual abuse—it provided the requisite 'verification.' "

*Id.* at 365-66 (emphasis in original).

■　　　We return, once more, to the present case. Defendant's act of knowingly masturbating in S's presence facilitated her touching, in the most basic way, by giving S access to defendant's penis. Thus, that conduct met the "advancement" requirement.

Further, the same conduct satisfied the "verification" requirement. As we explained in *Rinkin*, under *Walters*, conduct need not be *"uniquely* referable" to the charged crime to constitute a substantial step. *Rinkin*, 141 Or App at 366 (emphasis added). To be sure, defendant's conduct here was consistent with—and, in fact, constituted—"mere" endangering. But it was also consistent with attempted sexual abuse, as evincing enticement. That is sufficient. *See Walters*, 311 Or at 26 n 9; *see also State v. McJunkin*, 27 Or App 401, 556 P2d 164 (1977) (the defendant's actions in asking child victim to get into truck, offering to pay her, and stating that he would like to have sex with her, constituted a substantial step toward first-degree rape).

We thus conclude that the state presented legally sufficient proof that defendant engaged in conduct constituting a substantial step toward the commission of first-degree sexual abuse. That does not mean, however, that, in similar circumstances, proof of endangering the welfare of a minor will be *prima facie* sufficient proof of attempted sexual abuse. Rather, as noted, the state must also prove that the defendant acted with the requisite intent. We turn, finally, to that requirement.

As proof of intent, the state relies on the circumstances of the charged incident, on the fact that, on several occasions, defendant had exposed himself to S despite being warned to desist, and on defendant's apparent practice of exposing himself to two of his adult girlfriends as an invitation or enticement to engage in consensual sexual activity. We need not, and do not, decide what probative value, if any, should be ascribed to defendant's prior conduct toward adult women with whom he shared an intimate relationship[14]

---

[14] As noted, defendant did not preserve any objection to the admission of that evidence. *See* 190 Or App at 313. Nevertheless, the admission of that evidence does not necessarily demonstrate its legal sufficiency to establish a disputed fact.

because the state's other proof of intent was sufficient. In particular, presented with evidence that a 48-year-old man knowingly masturbated in the presence of an 11-year-old girl and that the same defendant had repeatedly exposed himself to the same girl, a trier of fact could reasonably infer that, in masturbating in the girl's presence, the defendant intended to promote sexual contact with the victim. *See generally State v. Wilhelm*, 168 Or App 489, 492-93, 3 P3d 715 (2000) ("romantic," "very intimate" letters from adult defendant to 13-year-old complainant were relevant and admissible "to demonstrate [the defendant's] sexual predisposition for this particular victim").

Affirmed.