Argued and submitted February 27, affirmed October 28, 2009, petition for review denied February 4, 2010 (347 Or 608)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE BELLA,
aka Jose Bella, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
070231074; A136811

220 P3d 128

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter

Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.*

LANDAU, P. J.

---

* Brewer, C. J., *vice* Riggs, S. J.

**LANDAU, P. J.**

Defendant was found guilty by the trial court of one count of assault in the fourth degree, ORS 163.160, and one count of coercion, ORS 163.275, based on an incident of domestic violence. On appeal, he advances two assignments of error. First, he argues that the trial court erred in denying his motion to exclude evidence of the victim's statements to hospital emergency room personnel, in which the victim identified her "boyfriend" as the person who had caused her injuries. According to defendant, the victim's statements constituted testimonial evidence for the purpose of the Confrontation Clause of the Sixth Amendment to the United States Constitution, as applied in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Second, defendant contends that there was insufficient evidence to establish that he committed the crime of coercion and that the trial court therefore erred in denying his motion for a judgment of acquittal on that charge. We reject both assignments and affirm.

Because defendant was convicted of the charged offenses, we view the facts in the light most favorable to the state. *State v. Johnson*, 345 Or 190, 192, 191 P3d 665 (2008). Late one night, defendant and the victim, his long-time girlfriend, had an argument. In the ensuing struggle, defendant stabbed the victim in the arm with a pocketknife and injured her in the leg. She went to the emergency room at the Kaiser Permanente medical center in Clackamas, where she was treated by Dr. Stephan M. Snyder. There is no evidence that any police officers were present during Snyder's interaction with the victim. Likewise, there is no evidence that police officers witnessed or in any other way participated, directly or indirectly, in the interaction.

After treating the victim, Snyder prepared a written report captioned "Visit Summary." Under the heading "Diagnoses," the report listed "OPEN WOUND OF FOREARM" and "DOMESTIC VIOLENCE." Under the heading "Progress Notes," the report stated that the victim had been in an altercation with her boyfriend; that her boyfriend was holding a knife; that he cut her forearm; that the victim also had a bruised right leg; that her boyfriend

previously had injured her by lacerating her forehead; and that the victim was afraid to leave her boyfriend. Although the progress notes referred to the victim's "boyfriend," it did not state defendant's name. The progress notes also stated that "Portland Police were called to interview the patient. She agreed to talk with them but was hesitant to charge him." Portland Police Officer Polas later contacted the victim in the emergency room. The victim was crying and upset; her left wrist was bandaged, and she had an injury to her leg.

Two days later, a different officer, Hecht, arrested defendant at the latter's residence. Hecht advised defendant of his *Miranda* rights and transported him to the police station. During the transport, defendant told Hecht that he had been holding the victim down because she wanted to leave, that the knife was in his back pocket rather than his hand, and that the victim must have cut herself on the knife while it was in his pocket as she struggled to free herself.

In a subsequent formal interview with Hecht, defendant stated that, after the victim got home from work later than he expected, he and the victim began arguing, that the victim was sitting on the couch, that he noticed the knife on the floor with its blade open, that the victim often walked around the house barefoot, that he did not want her to cut herself, and that he therefore put the knife into his pocket with the blade open. Defendant further stated that the victim wanted to leave and he did not want her to go, so he got on top of her and held her down to prevent her from leaving. Defendant stated that he thought that the victim must have gotten cut while she was struggling with him. Defendant stated that, after he noticed her bleeding, he took her into the bathroom and then suggested that she go to a hospital. Defendant told Hecht that the knife was a Swiss army knife and that the open blade was two or three inches long.

Defendant later told his aunt that he was upset that the victim might have been cheating on him and that, after he and the victim argued, the victim went to the hospital.

Before trial, defendant moved *in limine* to exclude the written emergency room "Visit Summary" on the ground that, without the physician who prepared the summary being made available for cross-examination, the admission of the

document would violate his Sixth Amendment right to confront witnesses against him. The trial court denied the motion, reasoning that the report was prepared for medical purposes, not a criminal investigation, and that, as a result, it was not "testimony" for Sixth Amendment Confrontation Clause purposes.

At trial, defendant moved for a judgment of acquittal on the coercion charge, arguing that, although he had confessed to the offense to Hecht, there was no additional evidence to corroborate the confession, as required by law. The state responded that defendant's statements to Hecht did not constitute a confession in the first place and that, accordingly, no corroboration was required. The state further argued that, even if the statements to Hecht did constitute a confession, the record contained ample corroboration. The trial court denied defendant's motion, explaining that defendant's statements were admissions and that, accordingly, corroboration of the statements was not required. Even assuming for the sake of argument that the statements to Hecht constituted a confession, the court continued, the record contained sufficient evidence to corroborate the commission of the offense.

■    As we have noted, defendant first assigns error to the trial court's denial of his motion *in limine*. He argues that the hospital emergency room "Visit Summary" was testimonial evidence, the admission of which violated his Sixth Amendment right to confront witnesses. Specifically, he argues that the circumstances under which the statements were made did not differ in any meaningful way from the statements at issue in *State ex rel Juv. Dept. v. S. P.*, 218 Or App 131, 178 P3d 318 (2008), *aff'd*, 346 Or 592, 215 P3d 849 (2009); *State v. Norby*, 218 Or App 609, 180 P3d 752 (2008); and *State v. Pitt (A120428)*, 209 Or App 270, 147 P3d 940 (2006), *adh'd to on recons*, 212 Or App 523, 159 P3d 329 (2007), in which we held that statements of child abuse victims made to certain non-police caseworkers were "testimonial" for Sixth Amendment purposes.

Defendant also contends that the statements by the victim in this case must be deemed to be testimonial for the purpose of the Sixth Amendment because, under ORS

146.750, physicians are required to report suspected non-accidental injuries to the medical examiner. That means, defendant reasons, that physicians necessarily become agents of law enforcement when their patients are the suspected victims of a crime, and their reports therefore become "testimonial" for Confrontation Clause purposes.

The state responds that the visit summary was not testimonial in nature and, consequently, does not implicate defendant's Sixth Amendment rights of confrontation. According to the state, whether information is "testimonial" for Confrontation Clause purposes depends on whether its purpose was to establish or prove events that may be relevant to a criminal prosecution. In this case, the state contends, the purpose of the visit summary was plainly not to establish criminal responsibility for the injuries to the victim; rather, the state argues, the purpose of the summary was to record information relevant to treatment. Our decisions in *S. P.* and similar cases, the state argues, are plainly distinguishable in that, in each case, a victim of child abuse made statements to agencies that worked in concert with law enforcement to investigate and prosecute criminal conduct of abusers. There is no evidence of any such working in concert in this case, the state observes.

As for the effect of the reporting requirements of ORS 146.750, the state argues that the mere fact that the law may impose on physicians an obligation to report certain suspicions to the medical examiner does not mean that the purpose of their interactions with their patients and the written documentation of those interactions are any less therapeutic in purpose and nature.

We agree with the state that the cases on which defendant relies are materially distinguishable and that the reporting obligations imposed by statute do not transform ordinary medical records into "testimony" for Sixth Amendment Confrontation Clause purposes. As the state correctly observes, in each of the cases relied on by defendant, nonpolice caseworkers actively worked with law enforcement personnel in gathering the information at issue.

Under *Crawford*, the admission of "testimonial" hearsay without an opportunity for cross-examination

violates a defendant's Sixth Amendment right to confront an adverse witness. In distinguishing "testimonial" and "nontestimonial" hearsay, the United States Supreme Court explained in *Davis v. Washington*, 547 US 813, 822, 126 S Ct 2266, 165 L Ed 2d 244 (2006), that a statement is testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." In several cases, we have concluded that statements to nonpolice caseworkers can be "testimonial" for Sixth Amendment purposes if the degree of cooperation between the caseworkers and the police makes clear that the primary purpose of collecting the information was to aid the police.

In *S. P.*, for example, we concluded that statements of a child victim of alleged sexual abuse to personnel at CARES Northwest, a child abuse assessment program, were testimonial because one of the purposes of the CARES interview process was to "function[ ] as an informational clearinghouse for police and child welfare authorities, so that they can deal effectively with perpetrators of child sex abuse." 218 Or App at 152-53. Moreover, we noted, the involvement of law enforcement in the CARES interview process was substantial—indeed, "pervasive," even though law enforcement personnel did not themselves conduct the interviews. *Id.* Our decision in *Norby*, which also involved a child victim's statements to a CARES physician, similarly was predicated on "the nature of the CARES program." 218 Or App at 617-18. The record in that case, we noted, showed that "CARES works closely with law enforcement agencies in gathering evidence of child sexual abuse." *Id.* at 618. And *Pitt*, which involved the statements of a child sexual abuse victim to a Lane County Child Advocacy Center interviewer, likewise was based on the fact that the interview was conducted for the express purpose of furthering a police investigation and for possible use in the prosecution of a crime. 209 Or App at 279.

In contrast, in *State ex rel Juv. Dept. v. K. S.*, 229 Or App 50, 209 P3d 845 (2009), the victim of an assault went to the Legacy Emanuel Hospital emergency room for treatment. During the course of her visit to the emergency room, the victim made statements to a nurse and a physician that

implicated her boyfriend as the person who had committed the assault. Emanuel staff then reported the incident to Portland police, leading to the initiation of delinquency proceedings against the boyfriend. The boyfriend objected to the admission of the victim's statements to the hospital emergency room personnel on Sixth Amendment Confrontation Clause grounds. The trial court overruled the objection, and we affirmed. Distinguishing *S. P.*, we noted that it was undisputed that the victim went to the hospital for the purposes of medical treatment, that the emergency room personnel questioned her for the purposes of medical treatment, and that there was no police or state involvement in the questioning. *Id.* at 57.

This case is much more like *K. S.* than any of the cases on which defendant relies. The victim went to the emergency room for treatment, not to report a crime. Snyder's interaction with the victim in the emergency room did not include participation by law enforcement authorities, either directly or indirectly. Police officers were not present during the interaction and, indeed, did not even witness it. The physician did not prepare his report for the purpose of furthering a police investigation or for possible use in the prosecution of any crime committed against the victim.

It is true that Snyder listed "domestic violence" as one of his diagnoses of the victim and noted the fact that police had been called to interview the patient. But defendant does not explain—and we do not understand—why merely identifying a possible cause of the victim's injuries and noting that police had been summoned transforms a physician into, in effect, a "proxy" of law enforcement authorities during his examination of the victim. *See State v. Mack*, 337 Or 586, 593, 101 P3d 349 (2004) (in conducting interview with victim—including eliciting statements so that officers could videotape them for use in criminal prosecution—caseworker from state Department of Human Services acted as "proxy" for police for purposes of Confrontation Clause analysis). Rather, throughout his interaction with the victim, Snyder acted in his capacity as a medical professional and for the purpose of medical diagnosis and treatment of the victim's injuries, and her statements to him were for the purposes of facilitating that diagnosis and treatment.

Defendant insists that the reporting obligations of ORS 146.750 compel a different result. That statute provides, in part, that a physician "having reasonable cause to suspect that a person * * * coming before the physician for examination, care, or treatment has had injury, as defined in ORS 146.710, inflicted upon the person other than by accidental means, shall report or cause reports to be made" to the appropriate medical examiner. ORS 146.750(1). In turn, ORS 146.710 defines "injury" as a "physical injury caused by a knife, gun, pistol or other dangerous or deadly weapon," or a "serious physical injury." According to defendant, those statutes effectively transform a physician's interaction with a patient into one the purpose of which, at least in part, is the investigation of a possible crime and furtherance of a criminal prosecution.

The appellate courts of this state have not previously considered the significance of ORS 146.750 in the context of determining whether out-of-court statements of a declarant to a physician are testimonial for the purpose of the Sixth Amendment's Confrontation Clause. In addressing that issue, it bears emphasis that the relevant inquiry remains the "primary purpose" of information collection involved. *Davis*, 547 US at 822; *see also State v. Camarena*, 344 Or 28, 38-40, 176 P3d 380 (2008) (in determining whether statements are testimonial for Confrontation Clause purposes, court considers both the nature of the questions asked and the declarant's responses; in the final analysis, court evaluates the declarant's statements). In the case of an encounter between a physician and a patient and the reporting of information collected from that encounter, then, the relevant question is what was the primary purpose of the encounter and the collection of information from it.

Stated that way, the question's answer seems relatively straightforward. Nothing in the wording of the statute suggests—much less compels, as defendant contends—the conclusion that it alters the purpose of an encounter between a physician and a patient. The statute simply requires that, *if* a physician reasonably suspects during the course of an examination that a patient has incurred a nonaccidental injury, the physician is obliged to pass that information along to the medical examiner. The statute does not, in effect, put a

police officer into the doctor's office; nor does it effectively convert the doctor into an agent or proxy of the police. It does not govern the nature of the encounter itself. It does not affect the type of the questions that the physician asks, the information that the physician obtains, or the primary purpose for which the physician obtains it. In other words, if the primary purpose of an encounter between a physician and a patient is the provision of medical treatment, the fact that the statute imposes an obligation to report any suspected nonaccidental injury of which the physician may learn during that process does not alter the primary purpose of the encounter itself.

In this case, it is not disputed that the victim went to the emergency room for the purpose of obtaining treatment for her injuries. There is no evidence that she went there to report a crime—certainly no evidence that such was the primary purpose of the visit. The evidence likewise appears undisputed that Snyder, the emergency room physician, prepared a report of his encounter with the victim as part of the process of medical diagnosis and treatment. Nothing in the record suggests that the primary purpose of the collection of the information and the preparation of the report was to assist in the investigation or prosecution of a crime.

Because Snyder's interaction with the victim did not include the involvement of law enforcement authorities and, notwithstanding any duty to report her injuries under ORS 146.750, he did not solicit any information from her with the purpose of furthering a criminal investigation or prosecution, the victim's statements to Snyder memorialized in the "Visit Summary" were not testimonial for the purposes of the Sixth Amendment. The trial court did not err in denying defendant's motion *in limine* to exclude evidence of those statements.

■ In his second assignment of error, defendant argues that the trial court erred in denying his motion for a judgment of acquittal on the coercion charge. Defendant notes that a person commits that crime when, among other things, the person (1) compels a victim to abstain from doing something (2) that the victim has a right to do (3) by making the victim fear that, if he or she does it, one of the enumerated

consequences will result—in this case, that the person will cause physical injury to the victim. ORS 163.275. Defendant argues that his statements to the arresting officer, Hecht, that, during his argument with the victim, he held her down because she wanted to leave, and to his aunt that he and the victim had gotten into an argument and that the victim ended up going to the hospital, amounted to uncorroborated confessions to the crime of coercion.

Relying on ORS 136.425 (2005), *amended by* Or Laws 2009, chapter 875, section 1, defendant contends that, by itself, a confession is insufficient to support a conviction for an offense; the statute, he notes, requires "some other proof that the crime has been committed." In this case, he contends, there may have been corroboration that he caused the victim physical harm—specifically, the testimony of Polas, who observed the victim's injuries at the emergency room, and the statements in the "Visit Summary" to the effect that the victim's boyfriend caused the injuries—but that evidence is sufficient only to corroborate the crime of *assault*, not coercion. The offense of coercion, he notes, required proof that he compelled the victim to abstain from leaving. In this case, he insists, there was no evidence of that beyond his purported confession.

The state responds that defendant's argument is built on a false premise, namely, that his statements to Hecht were "confessions" that are not sufficient to support a conviction in the absence of corroborating evidence. To the contrary, the state argues, defendant made those statements to Hecht to *exculpate* himself by asserting that the victim's injuries suffered during the incident were accidental. As such, the state contends, the statements amount to admissions, which do not trigger the corroboration requirement of ORS 136.425.

In reviewing the denial of defendant's motion for a judgment of acquittal, we examine the record in the light most favorable to the state to determine whether a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Cunningham,* 320 Or 47, 63, 880 P2d 431 (1994), *cert den,* 514 US 1005 (1995). In order to resolve that question in this case, we

determine whether defendant's two statements to Hecht constituted an uncorroborated confession as to the relevant element of coercion—that defendant compelled the victim to abstain from doing something that she had a right to do. As explained below, we conclude that they did not.

As defendant correctly notes, ORS 136.425 provides that a confession alone is insufficient to support a conviction; it must be corroborated by "some other proof that the crime has been committed." The Supreme Court, however, has explained that the statute applies only to statements that constitute "confessions," not to mere "admissions." The court's decision in *State v. Manzella*, 306 Or 303, 759 P2d 1078 (1988), illustrates the important distinction between the two.

In *Manzella*, the defendant was involved in a collision between two vehicles. When a police officer arrived, the defendant initially stated to him that one of the vehicles was his and that, while he was stopped in traffic, the other vehicle struck his vehicle from behind. The defendant later stated to the officer that he knew that his driving privileges were suspended and that he had been driving in violation of that suspension. *Id.* at 305. The defendant was charged with, and convicted of, driving while suspended. The only evidence at trial that he had been driving a vehicle was his initial statement to the police officer to that effect. *Id.* at 305-06. At trial, he moved—unsuccessfully—for a judgment of acquittal on the ground that the state had failed to corroborate his purported confessions, in violation of ORS 136.425. *Id.* at 305.

On review, the Supreme Court affirmed the denial of the defendant's motion for a judgment of acquittal. The court explained that, in determining the scope and application of the corroboration requirement of ORS 136.425, it is necessary to keep in mind the difference between a "confession" and a mere "admission." The court distinguished the two in the following terms:

"[I]t appears that statements made for some purpose other than to acknowledge guilt, *i.e.*, exculpatory statements or statements made as part of a person's employment duties, are not confessions. It follows, then, that a 'confession' must

have been made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense. If, in the course of the confession, the accused admits one or more elements of the crime charged, the state must produce 'some other evidence' of that element."

*Id.* at 316. Turning to the defendant's statements in that case, the court concluded that the two statements that the defendant had made to the police must be classified independently. The court held that, although the second of the two statements, in which the defendant acknowledged that he knew that he had been driving while suspended, was a confession, the same, the court continued, could not be said of the first statement, regarding the way that the accident had occurred. That statement, the court held, was an admission because the defendant did not make the statement for the purpose of acknowledging guilt of the offense of driving while suspended, but rather to further the investigation of the accident. *Id.* Because the initial statement was a mere admission, the court held, it could be used to provide the required corroboration of the confession. *Id.*

This court has applied the distinction between admissions and confessions, and reached similar results, in several cases. *See, e.g., State v. Porter*, 202 Or App 622, 123 P3d 325 (2005) (the defendant's purpose in stipulating, in a plea agreement, to the elements of DUII was to qualify for diversion; the defendant also understood that the stipulation did not preclude him from later contesting his guilt of that crime; under those circumstances, the defendant's stipulation was not a confession and therefore was admissible without corroboration); *State v. Anderson*, 103 Or App 436, 797 P2d 1072 (1990), *rev den*, 311 Or 60 (1991) (while under arrest for DUII and being transported to a police station, the defendant "voluntarily stated" that he had not known that he could be arrested for DUII based on operating an all terrain vehicle in sand dunes; because that statement was made not for the purpose of acknowledging guilt of DUII but to express his lack of knowledge about the law, it was admissible to corroborate his later confession to drinking while driving).

In other cases, we have reached a contrary result. For example, in *State v. Muzzy*, 190 Or App 306, 79 P3d 324

(2003), *rev den*, 336 Or 422 (2004), the defendant confessed to a police officer that he had engaged in sexual contact with a child. *Id.* at 310. After the defendant made that confession, the officer suggested that he write the child a letter of apology. The defendant did so; the letter stated, in part, that the defendant was writing to apologize for "something that happened" and that "I should never have let you touch me * * * between my legs." *Id.* at 311. On appeal of his subsequent conviction for attempted sexual abuse in the first degree and endangering the welfare of a minor, the defendant argued that there was insufficient corroboration of his original confession because the subsequent letter was itself a confession and therefore could not be used as corroboration. *Id.* at 317. The state argued in turn that his letter was an admission, not a confession, and therefore was admissible to corroborate his confession. *Id.*

We concluded that, although the defendant's letter to the child victim was written in part for the purpose of apologizing to the victim, it also constituted an acknowledgement of guilt. *Id.* at 320. In addition, because the letter was written at the behest of a police officer investigating the crime, immediately after the defendant confessed to committing it, the letter was "closely related" to the defendant's confession. *Id.* We noted that it was "unclear to what extent the 'purpose' assessment under *Manzella* is objective, subjective, or some combination of the two." *Muzzy*, 190 Or App at 320. We nevertheless determined that, "[t]o the extent that the defendant's 'subjective' purpose is material, such a determination is amply substantiated by defendant's circumstances at the time that he wrote the letter." *Id.* at 321. Because the letter itself was a confession, it did not constitute corroboration of the defendant's earlier confession. *Id.*; *see also State v. Simons*, 214 Or App 675, 685-86, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008) (concluding that there was ample evidence to support the trial court's finding that the defendant's subjective intent in making the relevant statements was to acknowledge his guilt; in addition, the statements were intertwined with his explicit confession to the alleged crimes; the relevant statements therefore could not be used to corroborate the defendant's confession).

In this case, defendant's conviction for coercion was based in part on his statements to Hecht that he had held the victim down to prevent her from leaving and that she injured herself as she struggled to get free. In context, as the trial court found, the statement was plainly made to explain what defendant contended was the accidental nature of the victim's injuries. Under the circumstances, this case seems to us much more like *Manzella*, *Porter*, and *Anderson* than *Muzzy*. Defendant's statements were not confessions, but rather admissions. Accordingly, the corroboration requirement of ORS 136.425 does not apply, and the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.