209 P.3d 845 (2009)
229 Or. App. 50
In the Matter of K.S., a Youth.
STATE ex rel. JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, Respondent,
v.
K.S., Appellant.
9207826511; A131692.
Court of Appeals of Oregon.
Argued and Submitted on December 4, 2008.
Decided June 10, 2009.
*846 Rankin Johnson IV, Portland, argued the cause and filed the brief for appellant.
Jeffrey J. Payne argued the cause for respondent. With him on the brief was Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Before HASELTON, Presiding Judge, and ROSENBLUM, Judge, and SERCOMBE, Judge.
ROSENBLUM, J.
Youth appeals a judgment of the juvenile court finding him to be within the jurisdiction of the court based on his conduct that, if committed by an adult, would constitute fourth-degree assault. He also appeals the court's subsequent revocation of the probation that he was on at the time of the new jurisdictional finding. He contends that the court erred in admitting certain hearsay statements made by the victim, J, in violation of the Oregon Evidence Code and the Oregon and United States constitutions. On de novo review, we conclude that, if there was error, it was harmless. Because of that determination, we also conclude that there was no error in revoking youth's probation. We therefore affirm.
We review the facts de novo and review the juvenile court's legal conclusions for errors of law. State ex rel Juv. Dept. v. S. P., *847 218 Or.App. 131, 133, 149, 178 P.3d 318, rev. allowed, 345 Or. 315, 195 P.3d 62 (2008). The pertinent facts are as follows: On January 5, 2006, J, who was pregnant at the time, arrived at the Legacy Emanuel Hospital (Emanuel) emergency room with abdominal cramps and bruises on her face, ear, back, shoulder, arm, and both hips. J did not testify at the delinquency hearing, and the court received J's Emanuel medical records  including the record from J's emergency room visit  as Exhibit 1, over youth's objection. The relevant documents in Exhibit 1 include the Emergency Department record (ER record) and a Child Abuse Social Worker Summary (social worker summary), both from the January 5 visit. The pertinent portions of the ER record were prepared by Bridges, an emergency room nurse, and Ferroggiaro, an emergency room doctor. The ER record indicates that J told Bridges that she was "assaulted" by her "boyfriend" "the other day" and that she told Ferroggiaro that she was "assaulted" and "pushed, kicked, and choked" at "home" approximately "two days [ago]." The ER record does not identify youth by name as J's assailant.
The Emanuel staff reported the circumstances of J's visit to the emergency room to the Portland Police Bureau (PPB) and to CARES Northwest (CARES).[1] Officer Hastings of the PPB responded by interviewing J at Emanuel. He noted extensive bruising on her arms, back, neck, and legs. Hastings testified that, in his training and experience, J's bruises were consistent with an assault.
After Hastings departed, J was interviewed at Emanuel by a social worker, Silver, on behalf of CARES. According to the social worker summary, J told Silver that her "boyfriend, [youth], kicked and beat her" and that the assault caused her injuries. The following day, after her discharge from Emanuel, J's bruises were photographed by a PPB criminalist, Brandon, and later received as evidence at the delinquency hearing.
Youth's great-grandfather, Rogers, testified as follows: On January 3, youth and J were involved in a dispute at his residence. Youth and J had been living together at his home; youth was J's boyfriend and J was approximately nine weeks pregnant. The dispute was loud and continued until Rogers escorted J and a friend of hers from the residence.
As noted, youth objected to the admission of Exhibit 1, raising two arguments. First, he asserted that J's statements in Exhibit 1 in which she identified him as her assailant  which appeared in the portion of the ER record prepared by Bridges and in the social worker summary  were testimonial hearsay and that their admission would violate his confrontation right under the Sixth Amendment to the United States Constitution. Second, as to the social worker summary only, youth argued that the state had not laid an adequate foundation under the "business records" exception to the hearsay rule, OEC 803(6). According to youth, since CARES and Emanuel are separate entities, the Emanuel records custodian could not authenticate records created by an employee of CARES.[2] The juvenile court concluded that the ER record and the social worker summary were admissible under OEC 803(6) and that their admission would not violate youth's constitutional confrontation right under the Sixth Amendment.
The court then raised the issue of Exhibit 1's admissibility under the Oregon Constitution in the absence of any evidence that J was unavailable as a witness. Youth argued that the state had made insufficient efforts to secure J's appearance as a witness. The state, in response, adduced testimony from an investigator with the district attorney's office, who detailed the state's ultimately unsuccessful efforts to serve J with a subpoena for her testimony. The court found that J was unavailable and concluded that the admission of Exhibit 1 would not violate youth's confrontation right under Article I, section 11. The court thus overruled youth's objection *848 and admitted J's Emanuel medical records as Exhibit 1.
At the conclusion of the hearing, the court found that youth had engaged in conduct that, if committed by an adult, would constitute fourth-degree assault. Youth was on probation for an unrelated matter, and the court subsequently held a probation revocation hearing, at which youth stipulated that the finding of jurisdiction in this delinquency proceeding was proof that he "committed a new law violation" and thereby violated the terms of his probation. The court revoked his probation on that ground.
On appeal, youth raises two assignments of error, which we address in turn. First, he contends that the juvenile court erred by improperly admitting into evidence the portions of Exhibit 1 containing J's hearsay statements-the ER record prepared by Bridges and the social worker summary. With respect to the social worker summary, youth argues that it was not admissible under OEC 803(6) because the CARES records custodian did not authenticate it. Youth also raises arguments that are common to both the social worker summary and the ER record prepared by Bridges. He argues that their admission under OEC 803(6) violated his confrontation right under Article I, section 11, of the Oregon Constitution, because that exception to the hearsay rule is not "firmly rooted." He also renews his assertion that their admission violated his confrontation right under the Sixth Amendment to the United States Constitution.
The state responds that youth preserved only the issue of the admissibility of the social worker summary, and-even then-only the challenges rooted in the OEC 803(6) authentication requirement and the Sixth Amendment. Youth argues that he preserved all of the issues that he raises on appeal by objecting to the admissibility of Exhibit 1 in general and by explaining that the basis for his objection was that it contained J's out-of-court hearsay statements.
We begin with whether youth preserved his statutory objections to admission under OEC 803(6). We conclude that youth preserved only his argument that the Emanuel custodian could not authenticate the social worker summary prepared by an employee of CARES. At the delinquency hearing, youth argued that Emanuel and CARES were separate entities and that the Emanuel custodian could not authenticate the CARES social worker summary. Youth therefore preserved that argument for appeal.
We turn to whether youth preserved his challenge to Exhibit 1 under Article I, section 11. We conclude that he did not. At the delinquency proceeding, the discussion of the Oregon Constitution focused solely on J's unavailability. On appeal youth no longer argues that J was available to testify. Instead, he asserts that the admission of Exhibit 1 under the business records exception violated his confrontation right under the Oregon Constitution because, according to youth, the business records hearsay exception is not "firmly rooted."[3] Because youth did not make that argument before the juvenile court, we decline to consider it.
As for youth's federal constitutional challenge, we conclude that youth preserved a Sixth Amendment challenge to the admissibility of the ER record and the social worker summary. At the delinquency proceeding, youth objected to the admission of Exhibit 1 on the ground that it contained J's statements identifying him as her assailant, which he contended were testimonial hearsay. The social worker summary contains J's statement explicitly naming youth as her assailant, and the portion of the ER record prepared by Bridges notes that J identified her assailant as her "boyfriend." Youth's objection was not limited to the social worker summary. We therefore conclude that youth's objection to the admission of J's statements identifying her assailant referred to both the social worker summary and the ER record. On appeal, youth advances an *849 identical argument, asserting that those documents contained testimonial hearsay and that their admission violated his Sixth Amendment confrontation right. Thus, youth adequately preserved his objection to Exhibit 1 under the federal constitution.
On the merits of youth's first assignment of error, we first address the ER record. Under Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the admission of "testimonial" hearsay without an opportunity for cross-examination violates a defendant's Sixth Amendment right to confront an adverse witness. In distinguishing "testimonial" and "nontestimonial" hearsay, the United States Supreme Court explained in Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), that a statement is testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."
In addressing that same issue, we have concluded that a victim's hearsay statements were testimonial under the Sixth Amendment after considering the victim's purpose in making the statement, the questioner's purpose in talking to the victim, and the amount of police involvement in or direction of the questioning. S. P., 218 Or.App. at 155-56, 178 P.3d 318. We noted that, in the context of a child abuse investigation, the victim's purpose in making a statement is less important than the questioner's purpose and the level of police involvement in the questioning. In S. P., the state referred the victim's parents to CARES for the purpose of furthering a criminal abuse investigation, and a Clackamas County Sheriff's deputy observed the CARES interview. In reversing the youth's conviction, we noted that a primary purpose of the CARES social worker's interview with the victim was to create evidence for use in a future prosecution and that there was significant state involvement in the interview.
In contrast, in this case, J went to the Emanuel emergency room because she was pregnant and had been experiencing "worsening" abdominal cramps. She made the out-of-court statements found in the ER record for the purpose of obtaining medical treatment. Bridges, a nurse, questioned J in her capacity as a medical professional and for the purpose of medical diagnosis and treatment; moreover, there was no police or state involvement in the questioning at that time. We conclude that J's statements contained in the ER record were not testimonial and that their admission did not violate youth's confrontation right under the federal constitution. The juvenile court did not err in admitting the ER record.
Turning to the admissibility of the social worker summary, we do not need to decide whether the juvenile court erred under OEC 803(6) or the Sixth Amendment in admitting it, because we conclude that, if there was any error, it was harmless. Given our de novo review function in this juvenile delinquency case, an error is harmless "if we are convinced that the properly admitted evidence establishes the acts in the [delinquency] petition beyond a reasonable doubt." State ex rel Juv. Dept. v. Sauer, 189 Or.App. 78, 84, 73 P.3d 293 (2003). In our view, even excluding the social worker summary, the record is sufficient to establish youth's acts.
Youth was accused of conduct that, if committed by an adult, would constitute fourth-degree assault. His theory of the case was that J either fabricated the assault entirely or that she was referring to a different boyfriend when she reported that she was assaulted by her "boyfriend." As noted, the ER record  which we have determined to be admissible  contains J's statements to Bridges and Ferroggiaro describing how she was "assaulted" and "pushed, kicked, and choked" at "home" by her "boyfriend" approximately "two days [ago]" or "the other day." The ER record also notes that J had bruises on her face, an ear, her back, a shoulder, a forearm, and both hips. In assessing the reliability of the ER record, we, like the juvenile court, note that J made the statements while seeking medical treatment from a doctor and a nurse at a hospital emergency room. Its reliability is further bolstered by the fact that it was prepared by professionals, in the course of their employment, who had a duty to create accurate records.
*850 Moreover, there was also substantial nonhearsay evidence presented at the delinquency proceeding. The state introduced 17 photographs of J's injuries, which were taken by Brandon and authenticated in her testimony. Hastings testified that he observed multiple bruises on J that were consistent with having been assaulted. Rogers testified that J was youth's fiancée or girlfriend, that the two were living together at his residence, and that, on January 3, he heard a loud and lengthy dispute between J and youth.[4]
We infer from the fact that Rogers testified that J was living with youth at his residence that J was referring to that residence when she stated that she was assaulted "at home." We likewise infer from Rogers's testimony that J was youth's fiancée or girlfriend and that, when she identified her assailant as her "boyfriend," she was referring to youth. J's statements in the ER record that she was assaulted "two days [ago]" or "the other day" were both made two days after the loud dispute between youth and J at Rogers's residence.
On de novo review, we conclude that the record  omitting the social worker summary  establishes beyond a reasonable doubt that youth "intentionally, knowingly, or recklessly" caused "physical injury" to J. ORS 163.160. Youth's defense amounted to his attorney's speculation that J either had another boyfriend who assaulted her or fabricated the assault out of animus toward youth. In our view, that speculation, which is not supported by any evidence in the record, does not create reasonable doubt. Accordingly, any error by the juvenile court in admitting the social worker summary was harmless. We reject youth's first assignment of error and affirm the juvenile court's finding of jurisdiction based on youth's conduct that, if committed by an adult, would constitute fourth-degree assault.
We turn to youth's second assignment of error, in which he asserts that the juvenile court erred in finding that he had violated his probation condition to obey all laws based on its finding of jurisdiction in the juvenile delinquency proceeding. According to youth, the juvenile court's reliance on the ER record and the social worker summary in the delinquency proceeding to revoke his probation violated the Oregon Evidence Code and youth's constitutional rights under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. We reject youth's second assignment of error because, even assuming that youth preserved this issue for appeal, any asserted error was based on the issue we have already resolved against him-namely, his objection to the court's use of J's hearsay statements in the juvenile delinquency proceeding. The court did not err in its finding of jurisdiction in the delinquency proceeding. Consequently, it did not err in relying on that finding when it revoked youth's probation.
Affirmed.
NOTES
[1] J was a minor at that time, and both doctors and nurses are mandatory reporters of suspected child abuse under ORS 419B.005 and ORS 419B.010.
[2] Youth did not challenge the admissibility of J's statements identifying him as her assailant under the "medical treatment" hearsay exception, OEC 803(4).
[3] Cf. State v. Barkley, 315 Or. 420, 430-31, 846 P.2d 390 (1993) (concluding that hearsay admitted under the medical treatment exception, OEC 803(4), was sufficiently reliable and, therefore, its admission did not violate the defendant's confrontation right under Article I, section 11, because OEC 803(4) is a "firmly rooted" exception).
[4] Rogers testified that he did not observe any physical altercation between J and youth and that he did not see any bruises or marks on J at that time. However, that testimony does not alter our conclusion.