Argued and submitted August 28, 2013, affirmed July 23, 2014

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSHUA LAIFER GRAVES,
*Defendant-Appellant.*

Washington County Circuit Court
D103364M; A148004

332 P3d 319

Alice Newlin-Cushing, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Defendant's assignments of error raise a question of first impression under Oregon law: Does the mere act of forwarding an e-mail create an additional layer of hearsay regarding the content of that e-mail? In this stalking case, defendant sent e-mails to "Nona," who then forwarded those e-mails to her daughter, "T. N.," one of defendant's victims. Defendant now argues that, by forwarding the e-mails, Nona added a layer of hearsay for which there was no hearsay exception, rendering the e-mails inadmissible under the Oregon Evidence Code and Article I, section 11, of the Oregon Constitution. Interesting as the issues may be, defendant did not advance a "layered hearsay" argument in the trial court, so we decline to address his assignments of error. Accordingly, we affirm.

For purposes of this appeal, the background facts are not in dispute. Defendant was in a relationship with T. N. After that relationship ended, T. N. moved in with "J. C.," who had been one of defendant's friends, and then began a relationship with J. C. Defendant, who was upset by that development, sent threatening e-mails and text messages to T. N. in which he threatened to harm J. C. and commit suicide. Defendant also threatened J. C. by, among other things, sending him text messages in which he threatened to kill him and deliver his body to T. N.

In addition to those e-mails and text messages, defendant also sent e-mails to Nona, T. N.'s mother. In those e-mails, defendant threatened to harm J. C. in front of T. N., blamed T. N. and J. C. for not being forthcoming about their relationship, and suggested that he would commit suicide. Nona forwarded some of those e-mails to T. N., who shared them with J. C.

Defendant was charged with stalking and telephonically harassing T. N. (Counts 1 and 3) and stalking and telephonically harassing J. C. (Counts 2 and 4). Before trial, the state indicated that it intended to introduce the text messages and e-mails sent by defendant, including those sent to Nona and forwarded by her to T. N. Upon receiving the state's exhibit list, defense counsel objected to the admission of the forwarded e-mails, arguing:

"I would object to those. If Nona's not going to be here to testify, I'm not going to be able to cross-examine her, and there's not going to really be a foundation. She's not a named victim in this case, though she is one of the alleged victims' mother, she lives in [another state]. I can't ask her questions. I can't really refute where these messages came from.

"So, essentially, the State is going to have [T. N.] get up there and say, 'These messages are from [defendant], which he provided to my mother, which she provided to me.' I would object to that. That denies me the right to confront the witnesses under the confrontation clause, and a—for the State to have an authentication of these messages. I think she needs to be here.

"I'm not objecting to the ones where they allege my client sent messages to her—to one of the people named in the Count 2 and 4. That's fine. That—I know that's coming in, but I have no way to cross-examine the other person, and, plus, I don't know that it's relevant, since it's not here."

Although defense counsel's argument focused on confrontation rights, authentication and relevancy, the trial court—at least at the outset of the argument—understood defendant to be making some type of hearsay objection as well. The court asked defense counsel, "So, if I'm hearing you correctly, you're saying you're objecting on relevance, hearsay, and confrontation?" Counsel responded, "Yes, Judge," but did not identify or elaborate on the nature of the hearsay objection.

In response to defense counsel's argument, the prosecutor then identified what he understood to be the relevant hearsay exception:

"So, the State would argue that the hearsay exception is admission by a party opponent, and that any—any argument that the Defense might have goes to weight, not admissibility. The State will be able to establish that [T.N.] knows the e-mail of her mother, knows the e-mail of the defendant, and was forwarded these and read these in the context of her communications with the defendant, which were also consistently threatening and concerning, regarding the defendant threatening to kill both [T. N.] and [J. C.]."

At that point, the court interrupted and asked the prosecutor to help clarify the court's understanding of the relevant e-mails and their content. The court stated:

"THE COURT:   Okay. So, let me back up for a minute—

"[PROSECUTOR]:   Sure.

"THE COURT:   —and make sure I understand these.

"The e-mails that you're—and I would—*because I wasn't really clear about this from [defense counsel], I guess—it sounded to me, when [defense counsel] was talking, that he was referring to the e-mails and the statements in the e-mails by the mother, but what you're saying to me is it's not the mother's e-mail statements that you're offering, it's the defendant's e-mails.* And, of course, that would not [*sic*?] be a statement by a party opponent. *It's not hearsay, because it's statements by the defendant, and if there's no confrontation clause problem, because they were his e-mails,* and obviously it would—if it has to do with the elements of the Stalking charge, it's relevant.

"So, I don't know if it matters that the e-mails are getting—I don't think it matters so much, but you may want to deal with this issue—I don't think it matters how the e-mails from the defendant get to [T. N.] if they are, in fact, the defendant's e-mails.

"*The fact that the mother passed them on, because she thought that they were relevant, doesn't make the defendant—doesn't turn that into a hearsay issue. I only see a hearsay issue—and if there is something in those e-mails that—like the mother might have said, you know, the— maybe the mother texted two or three sentences, attached his e-mail, and forwarded it on to the—the—the daughter, then I would think that the statements by the mother have to be deleted, and the daughter has to say that, 'I received these e-mails from my mother. She forwarded them on—they were from the defendant.'*

"[PROSECUTOR]:   *That is correct, Your Honor. The State has redacted them to remove any statements from Nona*[.]"

(Emphasis added.)

With that clarification, the trial court sought further input from defense counsel:

"THE COURT:    Okay. So, having said what I already—
*so, having said all this, let's go back to [defense counsel].*

"[DEFENSE COUNSEL]:    Your Honor, I'd also like to add that a lot of these e-mails to mom in [another state] are—I don't have the benefit of what mom was saying in response a lot of the time, but I—I can infer from reading the e-mails that there's a conversation going both ways.

"I'd also throw in there that those e-mails are prejudicial. And I don't say that prejudicial in the sense that they harm the Defense's case. That wouldn't be a relevant consideration, but these e-mails go into all sorts of aspects of [defendant's] relationship with the daughter, the things that they did while they were in relationship.

"If the Court were to look at those e-mails, there's a ton of material in there that may not be relevant. The State could simply ask [T. N.], 'Did your mother get those e-mails? You know, did she forward them to you?'

"If the Court were to look at those e-mails, there's a lot of prejudicial information in there. I—I think it's tenuous whether [T. N.] was—they have to be admitted into evidence, so that they can establish she was afraid. Those messages weren't for her."

(Emphasis added.)

After a recess, the parties returned to the subject of the e-mails and text messages, and the discussion shifted to whether certain e-mails or messages, or parts of them, were objectionable. They first considered certain messages sent directly from defendant to T. N. As for those messages, defense counsel "concede[d] that I think it is a statement by the party opponent," presuming that the state were to lay a proper foundation at trial. With regard to an e-mail sent directly from defendant to T. N., the trial court explained its concern that defendant referred to "just really pretty crass stuff," which raised prejudice and relevancy concerns: "And so one of [defense counsel's] concerns is that this is prejudicial to the jury, and not particularly relevant. *I think we got past the confrontation piece, because they're—he—his e-mails.*" (Emphasis added.)

When the discussion turned to e-mails forwarded by Nona, defense counsel repeatedly emphasized his underlying

concern that Nona would not be testifying, but he did not advance hearsay or confrontation arguments. Rather, he explained that the jury might be improperly swayed by the fact that defendant was sending crass e-mails to a mother, without understanding the broader context, including the fact that defendant and Nona had known one another for many years. He asserted that "all of these e-mails are just out of context, *with no one here to explain them in the form of Nona,* and they just have a ton of extraneous stuff that I think is wildly prejudicial." (Emphasis added.) Moreover, he argued, the jury would be unable to see Nona's redacted statements, which preceded the forwarded content from defendant and could be relevant to whether T. N. should have been alarmed by defendant's e-mail. With regard to one of the forwarded e-mails, he explained:

> "This is really just an e-mail to [Nona] here. And [defendant] isn't sending this message to [Nona], saying, 'Tell your daughter I'm going to come get her, or I'm going to come get [J. C.],' he's just fuming on the relationship to [Nona], is how I read it. And then I think you can tell that if the Court had the redacted out portion, which is what [Nona] said to [T. N.] when she forwarded it on, chastising her for the way she lived her life.[1]

> "* * * * *

> *"I think there's just a problem when [Nona's] not here to give us context for what kind of message is going on.* She could be saying something like, 'Yes, I agree with you,' or, you know, I don't know why they're that way. We don't know what the context of this message going back and forth is. It's clearly not when—as I read to the Court, when [Nona] gets the message and forwards it to her daughter, she certainly doesn't preface it with, 'I'm terrified for you.' She sends it with an admonition. *We lose all context. We don't have that witness here."*

(Emphasis added.)

The trial court suggested that some of the context could be provided through other witnesses at trial, but defense counsel countered that "[t]here will be a hearsay

---

[1] From the context of the discussion, it is not clear whether defense counsel had the redacted e-mails, unredacted e-mails, or both in front of him during the pretrial hearing.

objection, though, if I try to get into anything [Nona] said, or what [Nona's] thoughts were, or witness lacks knowledge. I don't have her here to ask her anything, and that forces the defendant to testify as to the context." The trial court remarked that there might be an exception to the hearsay rule that would allow defense counsel to introduce the broader context and, at that point, the prosecutor offered to restore some of the redacted text—that is, Nona's commentary preceding the forwarded e-mail text from defendant—if that were defendant's wish; the prosecutor had "assumed it was something [defendant] wouldn't want in because it was hearsay. I'm happy to have * * * the whole e-mail come in." Defense counsel ultimately agreed—subject to his objection that the entire e-mail be excluded—that it should be offered in redacted form, and the prosecutor agreed not to assert a hearsay objection if defense counsel cross-examined T. N. about the redacted parts of the e-mail.

Later, when the trial court described how that cross-examination might work, defense counsel again raised his concern about Nona's absence:

> "And it is somewhat difficult from the Defense perspective, again, *without the foundation of having [Nona] here*, the person these messages were intended for, to cross-examine someone else who didn't receive the e-mails secondhand.
>
> "* * * * *
>
> "So, that—that's the basis of my objection, also."

(Emphasis added.) Defendant repeated that objection once the parties had discussed the last of the forwarded e-mails, stating, "I would just object on *the foundation of not having [Nona] here*." (Emphasis added.) The court replied, "Yeah. Based on your previous objections."

Ultimately, the trial court ruled that five e-mails from defendant to Nona, which had been forwarded to T. N., would be admissible at trial, provided that the state laid a proper foundation. As was anticipated during the pretrial rulings, the state attempted to authenticate the forwarded e-mails at trial through the testimony of T. N. and J. C. rather than through testimony by Nona, who did not appear. The forwarded e-mails were admitted as exhibits

five through nine, and a jury subsequently found defendant guilty of all charges.

On appeal, defendant assigns error to the admission of each of those five forwarded e-mails, and he advances two related arguments with respect to each e-mail. First, defendant contends that "[d]efendant's statements in State's Exhibits 5-9 are inadmissible layered hearsay." (Boldface omitted.) Defendant explains:

> "Here, the state sought to admit statements purportedly made by defendant in e-mails sent to Nona. His statements would have been admissible under OEC 801(4)(b)(A) as admissions of a party opponent, but only if he had made them directly to the witness who testified about their content at trial. Instead, Nona sent e-mails to [T. N.] in which she forwarded e-mails she said she had received from defendant, *thereby creating new statements that 'defendant said X in his e-mail to me.'* Thus, because the original declarant, defendant, purportedly made the statements to Nona, and Nona relayed them to [T. N.], and [T. N.] then relayed them to [J. C.], through whom defendant's statements were offered at trial, the statements from Nona to [T. N.], and [T. N.] to [J. C.], and [J. C.] to the jury constitute layers of hearsay."

(Emphasis added.) According to defendant, "no hearsay exception applies to the layers of hearsay between Nona and [T. N.], or between [T. N.] and [J. C.], and the trial court's conclusion that they were admissions of a party opponent is incorrect."

Defendant's second argument is likewise rooted in the concept of "layered hearsay," but it is advanced under Article I, section 11, of the Oregon Constitution rather than the rules of evidence. Under Article I, section 11, a criminal defendant has the right "to meet the witnesses face to face." Relying on the Supreme Court's decision in *State v. Moore*, 334 Or 328, 49 P3d 785 (2002), defendant argues that "[i]t is the state's burden to establish that the declarant is unavailable for the purposes of Article I, section 11, if it seeks to admit hearsay evidence." And, again treating Nona as making an implied statement by forwarding the e-mail ("defendant said X in his e-mail to me"), defendant argues that the state failed to demonstrate Nona's unavailability.

The state responds that neither of those "layered hearsay" arguments was raised below and that both should be rejected on preservation grounds. The state acknowledges that defendant objected to the admission of the forwarded e-mails on multiple grounds, but submits that "layered hearsay" was never one of them. In the state's view, defendant "never referred to 'layered hearsay,' 'double hearsay,' or 'hearsay within hearsay,'" and did nothing that would have alerted the trial court or the state to the argument that he now raises on appeal. We agree with the state.

Generally speaking, an issue must first be presented to the trial court before it can be raised and considered on appeal. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (summarizing the preservation requirement). In *Peeples*, the Supreme Court described the principles behind that requirement:

> "Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. Finally, preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it. Our jurisprudence, thus, has embraced the preservation requirement, '[not] to promote form over substance but to promote an efficient administration of justice and the saving of judicial time.'
>
> "Preservation rules are pragmatic as well as prudential. What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court."

345 Or at 219-20 (citations omitted).

When analyzing whether a party has adequately preserved an issue for review, "we examine the individual circumstances of the case at hand to determine whether 'the policies underlying the rule have been sufficiently served.'"

*State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012) (quoting *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009)). A party "must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). However, in some circumstances, a less developed argument might be sufficient to satisfy the purposes of preservation. *E.g.*, *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) (noting that "the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments"). Yet, the argument still must be adequate to allow the opposing party to meet, and the trial court to consider, the matter claimed as error. *See Haynes*, 352 Or at 335 ("[A] short-hand reference, such as a single word or phrase, must be used in a way and context in which the other parties and the court would understand that the word or phrase refers to a particular legal or factual argument, and also would understand from that single reference the essential contours of the full argument."); *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998) (the question of preservation does not entail "a cursory search for some common thread, however remote, between an issue on appeal and a position that was advanced at trial").

In this case, although there were fleeting references to hearsay in the trial court, the transcript demonstrates that defendant never suggested below that he was making anything remotely like the "layered hearsay" argument that he now raises on appeal. Defendant's initial objection, upon receiving the state's exhibit list, raised confrontation, authentication, and relevancy issues. It was the trial court, not defendant, that then injected "hearsay" into the discussion when it restated defendant's contention ("if I'm hearing you correctly, you're saying you're objecting on relevance, hearsay, and confrontation"). However, shortly thereafter, the trial court sought clarification from the state about what was in the forwarded e-mails: "[I]t sounded to me, when [defense counsel] was talking, that he was referring to the e-mails and the statements in the e-mails by the mother,

but what you're saying to me is *it's not the mother's e-mail statements that you're offering, it's the defendant's e-mails.*" (Emphasis added.) With that clarification of what the state was offering, and the state's assurance that it was redacting Nona's own statements, the trial court understood the hearsay concerns to have been resolved ("I only see a hearsay issue—and if there is something in those e-mails that—like the mother might have said, you know[.]").

If defendant believed that the trial court had miscast his original objection, and that that objection had encompassed a "layered hearsay" contention similar to the one that he urges on appeal—*i.e.*, that the act of forwarding the e-mail was itself an assertion by Nona that created a layer of hearsay—then he should have (and most likely, would have) alerted the court to that fact at that point in the hearing. The trial court invited defendant to correct the court's understanding of the legal issues, but, rather than identify an implicit statement from Nona (such as "defendant said X in his e-mail to me") that continued to cause a hearsay problem even with the redactions, defendant turned instead to matters of relevancy and prejudice. From that point forward in the hearing, defendant never suggested that he was raising any hearsay objection, let alone a layered-hearsay objection, based on Oregon's Evidence Code or Article I, section 11. In fact, the only time that defense counsel himself uttered the word "hearsay" during the entire pretrial hearing was with respect to a potential objection that *the state*, not defendant, might raise regarding Nona's own statements to T. N. that prefaced the forwarded e-mails from defendant.[2] In light of the record, we conclude that defendant did not object to the admission of evidence of his own e-mail statements on the theory that Nona's act of forwarding those statements had added a layer of hearsay to them, and neither the state nor the trial court addressed the issue.[3]

---

[2] We appreciate that there can be circumstances in which the trial court, as opposed to a party, might raise an issue, and then proceed to resolve that issue, in a way that the purposes of preservation are served. Given the totality of the circumstances, and defendant's opportunity to clarify the issues presented, this is not such a case. The record does not indicate that the trial court considered whether Nona's act of forwarding the e-mails constituted an implicit statement.

[3] At one point in the hearing, defense counsel did say that he was "less concerned with the statements that are directly to [T. N.], and don't have this third

We also note that, had defendant actually raised a layered-hearsay argument, the record may well have developed differently in important ways. For instance, the parties could have litigated whether any implied statements by Nona were being offered for the truth of the matter asserted, or whether they were instead being offered to show the state of mind of the victims, T. N. and J. C. Moreover, with regard to defendant's claim of error under Article I, section 11, if he had argued that Nona made an implied hearsay statement that required the state to show that Nona was unavailable for purposes of Article I, section 11, the state might have been able to develop a record as to what efforts were made to secure her attendance at trial. As it is, we are left to speculate about the purposes for which any implied assertion was made and what facts might have been adduced regarding Nona's unavailability, further buttressing our conclusion that the policies underlying the preservation requirement would not be well served by considering, for the first time on appeal, defendant's layered-hearsay argument.

In sum, it would undoubtedly come as a surprise to both the trial court and the prosecutor to learn that defendant believed that, even with the redactions of Nona's own statements, there nonetheless remained a problem of layered hearsay in the forwarded e-mails. We therefore conclude that defendant's claims of error are not preserved, and we affirm on that basis.

Affirmed.

---

layer of [Nona]." That stray reference to a "layer" was not connected to the concept of hearsay and was not, by itself, sufficient to alert the trial court to the layered-hearsay argument that he now advances. *See Haynes*, 352 Or at 335-36 (holding that "the state's single reference to 'flight' did not adequately put the trial court on notice that the state intended to rely on the theories of 'flight' or 'proximity' to establish admissibility and did not adequately communicate to the trial court the content and substance of those theories," and that "[t]he state's brief mention of 'flight' during its argument to the trial court also was inadequate to fairly apprise defendant of the content and substance of the state's present arguments and to permit defendant meaningfully to respond to those arguments").