Argued and submitted November 10, 2014, reversed and remanded
April 13, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY MONTWHEELER,
*Defendant-Appellant.*

Grant County Circuit Court
120367CR; A152716 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANNITA MONTWHEELER,
aka Annita Harmon,
*Defendant-Appellant.*

Grant County Circuit Court
120368CR; A152715

371 P3d 1232

Neil F. Byl, Deputy Public Defender, argued the cause for appellants. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan Reid, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendants Anthony and Annita Montwheeler, owners of a scrap metal recycling business, were jointly indicted, tried, and convicted of aggravated theft in the first degree, ORS 164.057. Defendants agreed to pay money to Robert and Violet Heiple (the Heiples) for scrap metal hauled from their property at various rates of value. At trial, the parties disputed whether defendants underpaid the Heiples by failing to properly account for the amount of scrap metal they hauled from the property. Annita Montwheeler called an employee of the business to testify about the extent of the scrap metal operations on the property. The court excluded the witness from testifying because her name was not provided to potential jurors during the examination during *voir dire* about potential bias toward the parties and expected witnesses. Defendant made an offer of proof of the witness's testimony and the court reiterated its ruling.

On appeal, defendants contend that the exclusion of the witness violated their right to call witnesses under the compulsory process clauses of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[1] The state responds that neither defendant preserved that claim of error. We conclude that the claim of error was preserved by Annita Montwheeler and, although we do not reach the constitutional questions raised by defendants' arguments, we conclude the trial court erred and that that error requires reversal. With respect to Anthony Montwheeler, we conclude that the alleged error was plain and should be corrected. Accordingly, we reverse and remand.

The relevant facts are undisputed. Defendants are the joint owners of Northwest Materials Management Services, a business that hauls scrap metal to recycling facilities. In late August or early September 2010, the

---

[1] Article I, section 11, of the Oregon Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor[.]" Similarly, the Sixth Amendment to the United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor[.]"

Heiples' son, Edward Heiple (Heiple) contacted defendants about a scrap metal removal job. The Heiples owned property in rural Grant County, on which they had collected and stored many pieces of antique metal equipment: old commercial trucks, vintage cars, logging equipment, and train locomotives. The Heiples were interested in selling that equipment as scrap metal. Heiple and Anthony Montwheeler orally agreed that the Heiples would sell their metal to defendants, defendants would process and haul the metal to a recycling facility, and the Heiples would be paid based on the weight and type of any metal that was removed from their property.

For the next two months, Anthony Montwheeler and a crew of employees worked to remove the metal from the Heiples' property. One of those employees, Katie Montwheeler, used welding equipment to cut apart the larger pieces of scrap metal so that it could be more easily transported and recycled. Defendants then loaded the metal onto trucks and hauled it to recycling facilities for purchase.

At one of the recycling facilities, United Metals, the protocol was as follows. When a vendor brought a load of metal to United Metals, its staff weighed the loaded truck and then reweighed the truck after the metal was unloaded. The vendor's payment was based on the difference in weight. The company paid the vendor directly and did not identify the source of the metal. In September and October 2010, defendants and two of their employees delivered loads of metal to United Metals.

While they were removing metal from the Heiples' property, defendants periodically made payments to Heiple. On those occasions, defendants would present Heiple with a check and a handwritten accounting of the loads of metal that they claimed to have removed. On the last day of the job, Annita Montwheeler asked Heiple to sign an accounting, but he refused to do so. Heiple believed that defendants had failed to properly account for all of the loads that they had hauled from the property. In particular, he believed that the document did not account for the final load that had been taken from the property, and an earlier load taken on October 19.

Several months later, Heiple told an officer from the Grant County Sheriff's Office that defendants had stolen scrap metal from his parents. Heiple gave the sheriff's office the handwritten accountings that had been provided by defendants. A sheriff's deputy obtained business records from United Metals and other scrap metal recycling facilities, Schnitzer Steel and Pacific Steel, where defendants had delivered scrap metal during the time that defendants were removing metal from the Heiples' property. The deputies examined the weight of defendants' metal deliveries, as measured by the recycling facilities, and compared it to the weight of the metal removed from the Heiples' property as reported by defendants. That comparison suggested that defendants delivered more metal to United Metals and to other recycling facilities than they claimed to have removed from the Heiples' property. The deputies concluded that defendants had removed and failed to pay the Heiples for metal that was worth $13,693.

Defendants were jointly indicted and tried to a jury for the crime of first-degree aggravated theft. Prior to jury selection, the trial court asked all three parties to identify the names of the witnesses that they planned to have testify. Annita Montwheeler's attorney said that he planned to call two witnesses, neither of whom was Katie Montwheeler. Anthony Montwheeler's attorney said that he did not plan to call any witnesses. The trial court proceeded to ask the potential jurors whether any of them knew any of the anticipated witnesses. When the trial court discovered that a potential juror did know one of those persons, the court questioned the potential juror about whether he or she would be able to listen objectively to that person's testimony. Even though the trial court did not specifically ask whether any juror knew Katie Montwheeler, two jurors told the court that they did know her. Neither of those persons was selected to be on the jury.

As stated in the indictment, the state's theory was that defendants committed first-degree aggravated theft by taking "metals and/or money, of the total value of $10,000 or more[.]" *See* ORS 164.057.

In addition to the business records from the recycling facilities, the state produced testimony from several

witnesses, including Heiple. Heiple testified that defendants had never paid his parents for the last load of metal that they removed from the property, which included two broken-down cars (a Plymouth and an Oldsmobile) as well as smaller pieces of scrap metal. Heiple testified that the cars had been on the Heiples' property for about 15 years. After the state rested, Annita Montwheeler's attorney informed the court that she intended to call Katie Montwheeler as a witness to "counter or impeach Mr. Heiple's testimony." The following exchange then occurred between the trial court, the state, and Annita Montwheeler's attorney:

"THE COURT:   Well, okay. Do you want to respond?

"[THE STATE]:   Well, I do. We were told yesterday that she's not a witness. We haven't prepared to deal with her whatsoever, and it's pretty late notice at this point to say she is a witness.

"THE COURT:   I'm not going to allow it.

"[DEFENSE ATTORNEY]:   Your Honor, I mean, they received on August 9th my witness list that said Katie Montwheeler on it.

"THE COURT:   You know, when we pick a jury—and that's part of the reason you list the whole group, and at least ask the jury if they know these individuals, even if you don't intend to call them. That's why I asked for potential witnesses.

"For all I know, every juror knows this individual and has a relationship. I don't know that. They were not *voir-dired* on it. It could have easily been done. And, quite frankly, potential impeachment witnesses should be on witness lists, and I'm not going to allow it at this point.

"It needs to be—I accept the fact you gave the list to the district attorney, but I'm more concerned—you know, we go through this process with the jury, and we lost a number of jurors who had relationships with witnesses in *voir dire*. So that's my ruling.

"[DEFENSE ATTORNEY]:   I would ask that the court allow me to make an offer of proof, then.

"THE COURT:   Okay. All right. Do you need to put her on? I'm happy for you to make a speaking offer of proof. She

was going to impeach some of the things Mr. Heiple said, and just go ahead and state what you believe she'll testify to. * * *

"[DEFENSE ATTORNEY]: [Katie Montwheeler] was, as indicated by the witnesses, a person who was present and working on this job site. She would testify that they staged at the small field that we had talked about, that she and [Anthony Montwheeler] brought certain things like vehicles, cars, and other things to that staging area, that they were included in the steel that left that property. They didn't belong to Mr. Heiple.

"She would also testify that Mr. Montwheeler left fairly regularly to go work and supervise other jobs at the same time that this job was occurring.

"THE COURT: Okay. It would have been helpful to us, I agree, but my ruling is the same."

Defendants' witnesses testified that the metal that was measured at the recycling facilities included metal obtained from other clients as well as metal from the Heiples' property and, therefore, the weight measurements taken at those facilities did not reflect the weight of the metal removed from the Heiples' property. Annita Montwheeler also testified that she accounted for all of the metal that had been hauled from the Heiples' property on a handwritten ledger which she presented to Heiple. She further testified that the Plymouth and Oldsmobile in the last load did not belong to the Heiples. According to Annita Montwheeler, her employees brought those cars to the staging area on the Heiples' property so that a welder could cut them apart before they were taken to a recycling facility.

The jury convicted defendants of the aggravated theft charges. On appeal, defendants argue that the trial court erred when it refused to allow Katie Montwheeler to testify as a witness. The state's sole response is that defendants' argument is unpreserved and should not be reviewed as plain error. With respect to Annita Montwheeler, the state argues that, although she provided an "offer of proof," she never "actually objected to the trial court's ruling." The state contends that, even if her offer of proof can be considered an objection to the trial court's ruling, she did not

specifically argue that the court's ruling violated her constitutional right to compulsory process. With respect to Anthony Montwheeler, the state argues that he did not join in his codefendant's objection or otherwise do anything to preserve the argument that he now raises on appeal.

We easily reject the state's first argument that Annita Montwheeler did not object to the trial court's ruling. It is true that her attorney did not say "I object" to the trial court's decision to exclude the testimony of Katie Montwheeler. We have never held that a valid objection requires the use of magic words. Rather, an objection is made whenever a party communicates to a trial court that he or she disagrees with the court's actual or potential ruling. *Charles v. Palomo*, 347 Or 695, 701, 227 P3d 737 (2010) ("The fact that plaintiff made his request politely and did not use the word 'objection' does not make his objection inadequate."). In this case, we conclude that Annita Montwheeler effectively communicated to the trial court her position that the excluded evidence was admissible and that she disagreed with the court's ruling excluding Katie Montwheeler as a witness. First, defendant offered the testimony of the witness by calling the witness, thereby asserting that the evidence was admissible. Second, defendant countered the state's objection to Katie Montwheeler's testimony by pointing out that she had not committed a sanctionable discovery violation. Third, when the trial court ruled that it was nonetheless going to exclude the testimony based on its concern that members of the jury might have preexisting relationships with the witness, Annita Montwheeler made an "offer of proof." The purpose of an offer of proof is to help "preserve error relating to the exclusion of evidence," *State v. Olmstead*, 310 Or 455, 459-60, 800 P2d 277 (1990), and to create a record that will allow an appealing party to affirmatively establish that the trial court's ruling was prejudicial. *York v. Bailey*, 159 Or App 341, 347, 976 P2d 1181, *rev den*, 329 Or 287 (1999). In this case, Annita Montwheeler's offer of proof served those purposes and communicated her disagreement with the trial court's ruling; through her offer of proof, defendant pressed her position that Katie Montwheeler's testimony was admissible by demonstrating that it was relevant and she signaled she was at least considering appealing

the trial court's ruling.[2] Thus, defendant adopted a position in favor of the admission of Katie Montwheeler's testimony and in opposition to the state's objection and the trial court's ruling.

The state's second argument, which raises the question of whether Annita Montwheeler's offer of proof was sufficient to preserve the issue that she raises on appeal, is a closer question. Oregon appellate courts have eschewed a formulaic approach to the question of preservation in favor of a "functional" approach, *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008), and *Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977), under which we "emphasize the underlying purposes of preservation, in particular, fairness and efficiency." *State v. Smith*, 184 Or App 118, 121, 55 P3d 553 (2002). As the Supreme Court explained in *Peeples*, the purposes of the preservation requirement include the promotion of judicial efficiency, fairness to the opposing party, and a fully developed record:

> "Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. Finally, preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it."

345 Or at 219-20 (internal citations omitted). Our approach is "pragmatic as well as prudential" and "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument[.]" *Id.* The Supreme Court has recognized the distinction

> "between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. The first ordinarily is essential, the second less so, the third

---

[2] We note that the trial court actually acknowledged that defendant's offer of proof was an expression of her disagreement with its ruling; after defendant made her offer of proof, the trial court acknowledged that Katie Montwheeler's testimony "would have been helpful," but stated that the "ruling is the same."

least. Thus, when a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision."

*State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (citation omitted; emphasis in original). The following axiom from *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000), summarizes the basic preservation requirement: In order to preserve an alleged error for appellate review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."

In this case, the state objected to Katie Montwheeler being called to testify on the basis that, because defendants told the court during the *voir dire* process that they did not plan to call her to testify, the state was not prepared to question her. Immediately after that objection, the trial court stated that it would not allow Katie Montwheeler to testify. Annita Montwheeler responded by telling the court that Katie Montwheeler's name had been on the witness list that she had sent to the state 18 days before trial. By that comment, defendant signaled her disagreement with the state's apparent suggestion that Katie Montwheeler's testimony was excludable as a discovery violation, which was at that point the apparent basis for the trial court's ruling.[3] The court then clarified that its ruling was based on its concern that, during *voir dire*, the jurors had not been asked whether they knew Katie Montwheeler. The trial court cited no authority for its decision to disallow testimony on that ground. Defendant then signaled her continuing disagreement with the trial court's ruling by making an offer

---

[3] ORS 135.835 requires a defendant to disclose certain information, including the names and addresses of persons whom the defense intends to call as witnesses at the trial, to the prosecution prior to trial. ORS 135.865, in turn, provides for sanctions for discovery violations. It provides that:

"Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873 and 135.970, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

of proof that demonstrated that Katie Montwheeler's testimony would be relevant.

For the following reasons, we conclude that Annita Montwheeler adequately preserved the argument she makes on appeal, that is, that the trial court erred when it refused to allow Katie Montwheeler to testify. First, Annita Montwheeler offered that testimony and explained, correctly, why it was relevant. By doing so, she alerted the trial court that the evidence was admissible—and should be admitted—under the evidence code. Second, the trial court excluded the evidence *sua sponte*.[4] We consider that circumstance significant because a party may be at a disadvantage when attempting to counter a court's already-expressed reasoning, rather than countering an argument made by another litigant. In at least this situation, it was adequate for Annita Montwheeler, who had properly and correctly asserted a right to introduce certain evidence, to simply protest the trial court's decision to exclude that evidence. *Cf. State v. Doern*, 156 Or App 566, 569, 571-72, 967 P2d 1230 (1998), *rev den*, 328 Or 666 (1999) (by stating "'I take exception to that—to that limiting,'" the defendant adequately preserved a challenge to the trial court's *sua sponte* decision to limit closing argument to 20 minutes).

Third, there is little more explanation that defendant could have offered to the trial court in the circumstances present here, where the trial court's reason for excluding the evidence was, essentially, a *non sequitur*. OEC 402 provides that relevant evidence is presumed to be admissible unless excluded by other provisions of "the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law." The trial court did not rely on any of those listed sources of authority in excluding Katie Montwheeler's testimony. Rather, the court gave a reason—that the prospective witness had not been identified during *voir dire*—to which Annita Montwheeler could have offered little effective response, other than to reiterate her position that the evidence should be admitted because it

---

[4] Although the state objected to Katie Montwheeler's testimony, it did so at the trial court's urging, and the trial court's ruling was based on grounds entirely different from those offered by the state.

was relevant. Taking all three factors into account, we conclude that Annita Montwheeler adequately alerted the trial court of her position that the court would err if it excluded Katie Montwheeler's relevant testimony.

On the merits, we conclude that the court erred in excluding relevant evidence in the absence of an identified legal basis to do so under OEC 402. Under OEC 402, evidence that is relevant is presumptively admissible. *See also State v. Prange*, 247 Or App 254, 261, 268 P3d 749 (2011) ("Unless there is a reason to exclude relevant evidence, it must be received.") Moreover, OEC 402 specifies that the reason for the exclusion must be "provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law." Here, the trial court excluded concededly relevant testimony on a basis that was not grounded in any of those sources of authority. That was error.

That error was not harmless. According to Annita Montwheeler's offer of proof, Katie Montwheeler would have testified that defendants brought metal that did not belong to the Heiples to the staging area of the property and that that metal was included in the metal that was taken to the recycling facilities. As the person tasked with cutting apart larger pieces of metal at the staging area, Katie Montwheeler was in the position to testify that large pieces of metal from other job sites were brought onto the Heiple's property. That testimony would support defendants' position that the receipts from the recycling facilities included metal that did not belong to the Heiples. If the jury were to believe that testimony, it could have concluded that, at the very least, the state failed to prove that defendants took at least $10,000 worth of property from the Heiples, which is an element that the state needed to prove in order to convict defendants of the aggravated version of the crime of first-degree theft. ORS 164.057. Consequently, we reverse and remand Annita Montwheeler's conviction for a new trial.

One final issue requires our attention. Unlike Annita Montwheeler, Anthony Montwheeler did nothing to preserve his appellate argument before the trial court—he did not signal that he intended to question Katie

Montwheeler, he did not join Annita Montwheeler's objection to the trial court's refusal to allow Katie Montwheeler to testify, and he did not explain why her testimony was important to his defense. In their reply brief, however, defendants argue that, under *State v. Reyes-Sanchez*, 234 Or App 102, 105, 227 P3d 1217 (2010), *aff'd sub nom State v. Cazares-Mendez/Reyes-Sanchez*, 350 Or 491, 256 P3d 104 (2011), if we reverse Annita Montwheeler's conviction, we may also reverse Anthony Montwheeler's conviction under the plain error doctrine.

We may exercise our discretionary authority under ORAP 5.45(1) and correct an "error of law apparent on the record" even if it is has not been preserved when three prerequisites are met: the error is (1) one of law, (2) the legal point is obvious and not "reasonably in dispute," and (3) the court does not "need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Additionally, we must articulate our reasons for exercising our discretion to consider the error. *Id.*

In *Reyes-Sanchez*, the defendant and an alleged co-conspirator, Cazares-Mendez, were jointly charged with several crimes, including murder, and tried separately. 234 Or App at 104. At their respective trials, both the defendant and Cazares-Mendez attempted to call a witness who was prepared to offer hearsay testimony that the murder had been committed by a third party. *Id.* Neither trial court allowed that witness to testify. *Id.* On appeal, we reversed Cazares-Mendez's conviction on the grounds that the trial court had violated his right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to present reliable hearsay evidence. *Id*; *see also Chambers v. Mississippi*, 410 US 284, 93 S Ct 1038, 35 L Ed 2d 297 (1973). The defendant in *Reyes-Sanchez*, however, had not made an argument under the federal constitution to the trial court. *Reyes-Sanchez*, 234 Or App at 105. Nevertheless, we considered that argument on appeal as plain error and reversed the defendant's conviction. *Id.* Noting that the result of clinging too "staunchly to our preservation requirements" would be that one alleged co-conspirator would receive a new trial

and another would stand convicted of a serious crime, we reasoned that the ends of justice strongly militated in favor of correcting the error. *Id.*

In this case, we conclude that the error is one that is apparent on the face of the record—the error is one of law and the facts constituting the error are both apparent from the record and not disputed. We also conclude that, for the reasons expressed in *Reyes-Sanchez*, the ends of justice militate in favor of correcting the error. Furthermore, because the defendants in this case were tried together, the policies behind the general rule requiring preservation of error were fully served when Annita Montwheeler raised the issue to the trial court. *Ailes*, 312 Or at 382 n 6. Because defendants presented a unified theory of defense, the trial court's error harmed both defendants. We therefore exercise our discretion to address and correct Anthony Montwheeler's claim of error.

In summary, we conclude that both defendants have presented reviewable assignments of error; Annita Montwheeler preserved her assignment of error and we exercise our discretion to consider Anthony Montwheeler's assignment of error as an error apparent on the record. We also conclude that the trial court erred when it excluded relevant testimony without a lawful basis for that ruling in constitutional, statutory, or decisional law. Because that error was harmful to both defendants, we reverse and remand both of their convictions.

Reversed and remanded.