6 March 25, 2026 No. 226

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN DAVID KUEHNEL,
*Defendant-Appellant.*

Yamhill County Circuit Court
23CR62342; A185079

Cynthia L. Easterday, Judge.

Argued and submitted January 22, 2026.

Kasey Anne Hooker, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Lagesen, Chief Judge, Kamins, Judge, and Armstrong, Senior Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In this criminal appeal, defendant challenges a judgment convicting him of first-degree criminal mischief, ORS 164.365(1)(a)(A). Defendant argues that one of the state's exhibits, a document outlining the costs for repairs of a vehicle that he damaged, was hearsay admitted over his objection, and that the erroneously admitted evidence affected the jury's verdict. Because defendant generally failed to preserve the bulk of the argument that he raises on appeal, and because the one portion that is arguably preserved fails on its merits, we affirm.

Following a dispute between defendant and S, defendant backed up his pickup truck into S's truck, causing damage. For that conduct, defendant was charged with first-degree criminal mischief.[1] As relevant here, first-degree criminal mischief requires proof of property damage valued over $1,000. ORS 164.365(1)(a)(A). At defendant's trial, the state submitted photographs of S's vehicle that showed the driver's side door crumpled and a ball-hitch-sized hole punched out of the metal. S testified that he took the vehicle to the auto shop where he worked and had an estimate performed for repairs, and that the estimated cost of repairs would be $11,345. S further testified that it was a total loss, as his insurance would have only given him between $4,000 and $5,000 to replace the vehicle. The state also sought to admit a "repair sheet" from the auto shop estimating the cost for repairing the vehicle. Defendant objected to that physical document as hearsay and the trial court overruled his objection. The jury found defendant guilty.

In his sole assignment of error, defendant challenges the admission of the "repair sheet," arguing that it was hearsay and that "the state did not proffer sufficient evidence that the repair sheet met the requirements of the business records exception" to the hearsay rule. Despite never making that particular argument at trial, defendant argues that his challenge is preserved, because "[t]he state and the court were on notice that the document was presumably inadmissible and that the state had to justify its admissibility." We disagree.

---

[1] Defendant was also charged with, and convicted of, reckless endangerment. Defendant does not challenge that conviction on appeal.

At trial, the state laid a foundation for the repair sheet by first eliciting testimony from S about what the document was:

"[PROSECUTOR:]   And, [S], can you tell me what that is?

"[S:]   This is what [*sic*] a repair sheet usually I receive one of these a copy as well as a copy in the vehicle of what is needed to be replaced and where the parts, what kind of parts you're going to use, aftermarket, used, it's a complete estimate—

"[PROSECUTOR:]   Okay—

"[S:]   —or estimate on that part on—

"[PROSECUTOR:]   And so this is an estimate for what?

"[S:]   The damages on the vehicle.

"[PROSECUTOR:]   The damages on your—

"[S:]   4Runner."

The state next asked S to explain the process for creating an estimate at his workplace. S, as an employee of the repair shop, described how the calculations were made:

"[S:]   Okay, so the calculations are done by an actual physical book

"[PROSECUTOR:]   Okay.

"[S:]   —that are produced by the collision industry that we go by estimating guides, so if you replace a fender, it has a standard time of what it is to take to replace a fender, so * * * it's usually an itemi[z]ed list of things you need to do * * *.

"[PROSECUTOR:]   So this includes standard labor rates—

"[S:]   Yeah.

"[PROSECUTOR:]   —standard times to fix everything[.] [W]hat's the total amount * * * in [] the estimate that you received to fix the damage?

"[S:]   [T]he * * * total amount is $11,345. On my professional opinion and what I would do if this was my job * * *, this is an incomplete estimate—

"[PROSECUTOR:]   Okay, and why is that?

"[S:]   Why is that, the trim panel, the door's not on there—

"[PROSECUTOR:]   Okay.

"* * * * *

"[S:]   * * * [A]nd the other thing is, is until a complete teardown [is] done * * * we cannot determine how bad the inner damage is to the inners—

"[PROSECUTOR:]   I guess is this—

"[S:]   Close enough."

S then confirmed that the repair sheet was "a fair and accurate representation of the estimate * * * [he] received."

Counsel for defendant then asked, in aid of objection, if S made the document himself, or just received it as a "customer." S responded that he did not make the document himself and received it as a customer:

"As soon as my supervisor and my estimator started ta[l]king and evaluating the damage to the vehicle, I became a customer. That's how that anybody would look at it, it's there's a format that they're required to try to stick in within these [para]meters for the insurance companies that, you know, it doesn't matter if it's private person paying or the insurance company, they have to stick with these certain [para]meters and they're very strict on that, and I got to say that [the estimator] did a very more than a fair assessment of that prior to the teardown because it changes after it tears down."

Counsel for defendant then said, "I guess the objection, Your Honor, would be a hearsay issue." The court asked defense counsel, "Are you objecting as to hearsay?" and defense counsel said, "Yes." The court then said, "Okay. Do you want to be heard?"[2] The state responded that S had training as an employee and could provide the basis of the document:

"Your Honor, do I need to be heard? Your Honor, he—not only is this a representation of what I'm saying it is, it's the estimate he received, but aside from that, which I believe

_____

[2] The record is not clear as to whether the court was asking that question to defense counsel or the prosecutor.

> would be sufficient to admit it as evidence as to the cost of repair, but [S] has specific training and is actually an employee there and knows how to provide the basis, there it's—"

The court then interrupted the prosecutor and ruled that the document was admissible:

> "That's okay, it's a little unusual situation because he actually kind of authenticates it because he's an employee there as well, so objection noted, but I'm going to overrule and admit it."

Defendant was ultimately convicted of first-degree criminal mischief and this appeal followed. On appeal, the parties dispute whether defendant adequately preserved the issue for our review. We conclude that defendant's objection is insufficient to preserve the argument he makes now on appeal, for two reasons. First, defendant's objection followed by questions in aid of objection did not alert the court that he disputed the state's view that the hearsay was subject to the business records exception. Second, even if the court was generally aware that defendant took issue with the business records exception (by virtue of defendant's questions in aid of objection), those questions did not alert the court, or the state, to the specifics of defendant's argument on appeal. We address those points in turn.

First, merely calling something out as a "hearsay issue" does not necessarily apprise the court, or the opposing party, as to the nature of the issue. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that preservation serves several purposes, including providing the trial court the chance to consider and rule on an issue, ensuring fairness to the opposing party by giving them an opportunity to respond, and fostering full development of the record). In this case, defendant may have only been challenging the document as hearsay (and therefore presumptively inadmissible). To explain that he was challenging whether the state sufficiently proved it was admissible under a hearsay *exception*, defendant needed to argue that that exception did not apply or that the state's foundation for it was insufficient.

Of course, a party need not use any magic words, so long as their objection sufficiently clues in the other parties and the court to the nature of their argument. *See State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012) ("[A] short-hand reference, such as a single word or phrase, must be used in a way and context in which the other parties and the court would understand that the word or phrase refers to a particular legal or factual argument, and also would understand from that single reference the essential contours of the full argument."); *State v. Montwheeler*, 277 Or App 426, 433, 371 P3d 1232 (2016) ("We have never held that a valid objection requires the use of magic words. Rather, an objection is made whenever a party communicates to a trial court that he or she disagrees with the court's actual or potential ruling."). Here, however, defendant's objection did not alert the parties or the court as to his concern. There was no way of knowing that defendant had any issue with the specific hearsay *exception* that the state used to submit the evidence.

In that regard, this case bears a strong resemblance to *State v. Ferry*, 255 Or App 625, 298 P3d 63, *rev den*, 353 Or 868 (2013). In *Ferry*, the prosecutors sought to have a child victim read a letter she wrote to the district attorney, in which she discussed what a school official and a police officer had told her. The prosecutor asserted that, although the letter was hearsay, it was admissible under OEC 803 (18a)(b), a hearsay exception encompassing statements by a child declarant concerning an act of abuse. *Id.* at 627. The defendant objected to the admission of the letter on three grounds: (1) the letter was hearsay and the officials' statements quoted in the letter were double hearsay; (2) the officials were not identified, so they could not be cross-examined; and (3) the officials' statements amounted to vouching. *Id.* In response, the prosecutor reasserted that the letter fell under OEC 803(18a)(b) and that the statements by third parties within the letter were not offered for the truth of the matter asserted and thus were not hearsay. *Id.* at 628. The defendant did not challenge either of the prosecutor's assertions and instead moved on to his confrontation arguments. *Id.* The trial court admitted the letter under OEC 803(18a)(b) and the defendant was ultimately convicted. *Id.*

On appeal, the defendant argued that the trial court erred because the legislature intended OEC 803(18a)(b), under those circumstances, to only encompass statements by victims of abuse themselves, and not statements made by others to victims of abuse. *Id.* at 628. We concluded that the defendant's argument was not preserved because the defendant had not made that argument below, and did not challenge the prosecutor's assertion that OEC 803(18a)(b) applied:

> "As explained above, before the trial court, when defendant asserted that the letter was hearsay and the officials' statements were double hearsay, the prosecutor responded that, although the letter was hearsay, it was admissible under OEC 803(18a)(b) and the officials' statements were not double hearsay because they were not offered for the truth of the matters asserted. Defendant did not challenge the prosecutor's assertion that OEC 803(18a)(b) applied[.] * * *
>
> "By contrast, on appeal, defendant challenges the admissibility of the letter under OEC 803(18a)(b), contending that OEC 803(18a)(b) does not cover statements made by anyone other than the victim of abuse. He did not make that argument below, and, under our case law, his failure to do so precludes us from reaching it."

*Id.* at 629.

Like in *Ferry*, defendant here raised a hearsay issue. And just like in *Ferry*, the state then indicated that a specific hearsay exception applied, and—importantly—defendant did not subsequently challenge the application of that hearsay exception. Now, on appeal, defendant challenges the applicability of that specific hearsay exception, providing an argument in support that was not presented to the trial court. Preservation requires more. Defendant "did not make that argument below" and "his failure to do so precludes us from reaching it." *Id.*

In arguing otherwise, defendant contends that the "business records exception" issue was preserved because he did ask two questions in aid of his objection: Whether S received the document (as opposed to created it himself), and if S received the document because he was the customer or because he worked there. We disagree. Defendant's

arguments on appeal were not encompassed by the questions he asked in aid of objection. To understand why, it is helpful to explain what, exactly, defendant is now arguing on appeal. On appeal, defendant contends that the state failed to lay a sufficient foundation for the "business records exception" because it failed to adduce evidence that the repair sheet was "made at or near the time" of the event, that the person who created the repair sheet "had a first-hand account of the evaluation," that the estimator's calculations came from a reliable source, and that S was a qualified witness. *See* OEC 803(6) (explaining requirements of business records exception).[3]

Defendant's questions in aid of objection did not relate to when the repair sheet was made, what the source of the repair sheet's calculations was, or whether the person who created the repair sheet had first-hand knowledge. As a result, the questions that were asked are insufficient to demonstrate that the state and the court understood what defendant's concerns with the document were. *See State v. Manigo*, 342 Or App 384, 388, 576 P3d 525 (2025) ("Ordinarily, it is the appellant's burden to furnish a sufficient record to demonstrate that the trial court erred." (Internal quotation marks omitted.)); *State v. Graves,* 264 Or App 358, 369, 332 P3d 319, 325 (2014) ("Had defendant actually raised [the specific hearsay argument presented on appeal], the record may well have developed differently in important ways."). *Compare State v. Britt*, 335 Or App 91, 94-95, 557 P3d 524 (2024) (generic objection to admission of medical records as outside the scope of business records exception, and thus business records exception did not apply, was sufficient to preserve more specific arguments

---

[3] OEC 803(6) provides, as an exception to the general rule that hearsay is inadmissible, that the following is admissible:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

on appeal that medical records were too speculative to fall under the business records exception) *with Ferry*, 255 Or App at 629-30 (challenge to letter as hearsay and double hearsay followed by admission of letter under a hearsay exception, absent more, insufficient to preserve challenge to hearsay exception on appeal) *and State ex rel Juv. Dept. v. K. S.*, 229 Or App 50, 55, 209 P3d 845, *rev den*, 347 Or 259 (2009) (the youth's objection to the admission of a hearsay statement on the ground that the witness could not properly authenticate it did not preserve the youth's appellate argument that the state had failed to satisfy a different requirement for admission).

One of defendant's questions in aid of objection—whether S was receiving the report as a "customer" or an "employee"—does relate to an argument that defendant makes on appeal, that S was not "a custodian or other qualified person." *See* OEC 803(6) (a foundation for the business records exception must be shown "by the testimony of the custodian or other qualified witness"). Assuming that argument is preserved, we are not persuaded by it because S was familiar with the record-making practices of the business. "[A] party seeking to utilize [the business-records exception] must put on evidence regarding the record-making practices of the business that created the record sufficient to establish that the record has the characteristics set out in the rule itself." *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 239-41, 503 P3d 1233 (2022). "To do so, a party can call a witness from the business that created the record. Or, a party can call another witness who can testify about the practices of the business that created the record." *Id.* That witness may be a custodian of records, although that is not a requirement. *See id.* at 241 (citing Christopher B. Mueller & Laird C. Kirkpatrick, 4 *Federal Evidence* § 8:78, 727-28 (4th ed 2013) (describing, for the equivalent federal rule, that "[w]hat is important is that the witness be familiar with the pertinent record-making practices of the business, and with the manner in which records of the particular sort being offered are made and kept, and these points may be shown by anyone with the appropriate knowledge")). Although S testified that he received the repair sheet as a customer, he also testified—as a certified auto body collision

technician who worked at the shop—as to how those types
of documents were created by the business, including the
procedure for determining the estimate. S explained how
calculations were done, and that the supervisor and esti-
mator were required to stick within the parameters for the
insurance companies. The trial court thus did not err in con-
cluding that defendant was a "qualified person" to testify
"about the practices of the business that initially made and
kept the record." *Id.* at 240-41.

Affirmed.